UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IAFETA MAUIA,<br>　　　　　Plaintiff,<br>　　v.<br>PETROCHEM INSULATION, INC.,<br>　　　　　Defendant. | Case No. 18-cv-01815-MEJ<br><br>**ORDER RE: MOTION TO DISMISS**<br>Re: Dkt. No. 14 |

## INTRODUCTION

Pending before the Court is Defendant Petrochem Insulation, Inc.'s Motion to Dismiss pursuant to Federal Rule of Civil Procedure (Rule) 12(b)(6), and/or Strike pursuant to Rule 12(f). Mot., Dkt. No. 14. Plaintiff Iafeta Mauia filed an Opposition (Dkt. No. 19) and Defendant filed a Reply (Dkt. No. 20). The Court finds this matter suitable for disposition without oral argument and **VACATES** the July 12, 2018 hearing. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7-1(b). Having considered the parties' positions, the relevant legal authority, and the record in this case, the Court **GRANTS IN PART** Defendant's Motion for the following reasons.

## BACKGROUND

Plaintiff worked as an Onsite Project Manager/Superintendent for Defendant until March 2016. First Am. Compl. (FAC) ¶¶ 11, 24-26, 28, Dkt. No. 10. He was an hourly employee. *Id.* ¶¶ 11, 27. During his employ, he was assigned to work on several off-shore oil platforms in the California coastal waters. *Id.* ¶¶ 24, 29. Each of his "hitches" aboard the platforms typically lasted 7 days, but were sometimes longer. *Id.* ¶ 30. Plaintiff was carried to and from each hitch by a helicopter or boat hired by Defendant; he could not come on or off the platform on his own. *Id.* ¶¶ 2-6, 33-34. He alleges that, even though he was on the platform for the duration of each

hitch, he "typically received pay for only 12 hours each day while on the oil platforms, but nothing for the remaining 12 hours of restricted/controlled stand-by which were also spent on the platforms." *Id.* ¶¶ 7-9, 31. On this basis, Plaintiff alleges he did not receive compensation for all hours worked on the platform. *Id.* ¶ 32. And because he could not leave the platform during his meal or rest periods, he alleges he remained on duty or on call during those times. *Id.* ¶¶ 34-35. He alleges that, as such, Defendant was required to pay him one extra hour of pay for each on duty meal or rest period, and that Defendant failed to do so. *Id.* ¶¶ 36-37. Plaintiff also alleges he was denied accurate pay stubs. *Id.* ¶ 38.

Based on these allegations, Plaintiff asserts the following claims on behalf of himself and a putative class of other similarly situated persons: (1) failure to pay minimum wage in violation of California Labor Code §§ 1194, 1197; (2) failure to pay overtime and double-time premium wages in violation of California Labor Code § 510 and 8 California Code of Regulations § 11160, subd. 3(A); (3) failure to provide lawful meal and rest periods in violation of California Labor Code §§ 226.7, 512, and 8 California Code of Regulations § 11160, subd. 3(A); (4) unfair competition pursuant to California Business and Professions Code § 17200; and (5) willfully failing to pay final wages to Plaintiff within 72 hours of his leaving Defendant's employ, in violation of California Labor Code § 203.

From May 7, 2012 through the present, Defendant was party to a collective bargaining agreement (CBA) with a labor union of which Plaintiff was a member. *See* I. Garcia Decl. ¶ 4 & Ex. A, Dkt. No. 14-1.[1]

---

[1] Defendant asks the Court to take judicial notice of the CBA. *See* RJN, Dkt. No. 14 at ECF p. 32; *id.* at Ex. A (CBA). Plaintiff does not object to the request. The Court takes judicial notice of the CBA. *See Hernandez v. Sysco Corp.*, 2017 WL 1540652, at *3 (N.D. Cal. Apr. 28, 2017) ("A court may take judicial notice of a CBA in evaluating a motion to dismiss."); *Johnson v. Sky Chefs, Inc.*, 2012 WL 4483225, at *1 n.1 (N.D. Cal. Sept. 27, 2012) ("Courts routinely take judicial notice of the governing collective bargaining agreement where necessary to resolve the issue of preemption" (citing *Tran v. Univ. of Cal. San Francisco*, 2007 WL 963222, at *2 n.1 (N.D. Cal. Mar. 29, 2007)); *see also Hall v. Live Nation Worldwide, Inc.*, 146 F. Supp. 3d 1187, 1193 (C.D. Cal. 2015) (court may look beyond face of complaint to determine whether claims alleged as state law causes are in fact federal claims, even on motion to dismiss)). The Court does not rely on the other documents Defendant attaches to its request for judicial notice, and accordingly finds the request moot as to those.

2

**LEGAL STANDARD**

Rule 8(a) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations and citation omitted).

A court may dismiss a complaint under Rule 12(b)(6) when it does not contain enough facts to state a claim to relief that is plausible on its face. *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citations and parentheticals omitted).

In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *Id.* at 550; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007). In addition, courts may consider documents attached to the complaint. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) (citation omitted).

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotations and citations omitted). However, the Court may deny leave to amend for a number of reasons, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment."

3

*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

**DISCUSSION**

**A.     Minimum Wage Violations (First Cause of Action)**

California law generally requires non-exempt employees be paid at least the state-mandated minimum hourly wage for all hours worked. Cal. Lab. Code §§ 1194, 1197. The FAC alleges Defendant typically only paid Plaintiff for 12 hours of work each day and nothing for the remaining 12 hours of stand-by time, despite the fact Plaintiff could not leave the platform and remained under Defendant's control. FAC ¶¶ 30-33, 35, 41. The FAC further alleges that restricted/controlled stand-by time is considered "hours worked" under California law. *Id.* ¶ 40. As such, the FAC alleges Defendant failed to pay Plaintiff minimum wage for 12-hours a day during his hitches and states a claim under California law.

Defendant argues the failure to pay minimum wage claim is preempted by the Labor Management Relations Act (LMRA). Mot. at 11-14. The LMRA preempts "any state cause of action 'for violation of contracts between an employer and a labor organization'" (*Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Tr. for So. Cal.*, 463 U.S. 1, 23 (1983)), as well as any claim that is "substantially dependent on analysis of a [CBA]" (*Caterpillar, Inc. v. Williams*, 482 U.S. 386, 394 (1987) (internal quotation marks and citation omitted)). Defendant argues the minimum wage claim is substantially dependent upon interpretation of the CBA, but does not explain why. In fact, the CBA makes no mention of on-call, stand-by, or sleeping time; the CBA also does not prescribe any specific daily work schedule or shift hours. *See* CBA. Based on the current record, it appears that resolving whether Plaintiff should be compensated for those hours will not substantially depend upon interpreting the CBA. Instead, it will depend upon examining the level of control Defendant exerted upon Plaintiff during the time outside of his regular shifts. *See Mendiola v. CPS Security Sols., Inc.*, 60 Cal. 4th 833, 840-42 (on-call or stand-by time can constitute hours worked depending on level of control exerted by employer); *see also Tan v. GrubHub, Inc.*, 171 F. Supp. 3d 998, 1008-1010 (N.D. Cal. 2016) (discussing factors relevant to determining whether waiting time is compensable under California law). Depending

4

on a number of factors, California law may require employers to pay workers for time during which they cannot leave their workplace, even if they spend that time sleeping or otherwise not engaging in work. *See id.* Whether Plaintiff's off-shift hours are compensable on-call time is a question of interpretation of state law, and question of fact that cannot be resolved on this motion to dismiss.

Having failed to explain why this claim is "substantially dependent" on an interpretation of the CBA, Defendant attempts to recast the plain wording of the FAC: "Plaintiff's claim is really just an attempt to artfully plead around the overtime and double-time provisions of the CBA. Indeed, to the extent that Plaintiff contends he should have been paid for the 12-hour period in addition to the 12-hour shift during which he was actively engaged in work, his claim for 'minimum wages' is effectively a claim for further payment of 'overtime' or 'double time' wages." Mot. at 11-12. Not so. Plaintiff's claim is that he is entitled to be paid a minimum wage for the time he was kept on a platform, unable to leave, during his multi-day hitches. Whether this time would make Defendant liable for additional overtime wages is a separate and distinct issue, which does not provide any basis for dismissing the claim as it is pleaded in the FAC.

Defendant's motion to dismiss the first cause of action is DENIED.

**B.      Failure to Pay Overtime and Double-Time Premium Wages (Second Cause of Action)**

California Labor Code § 510 requires employers to pay any work in excess of 8 hours in one work day and any work in excess of 40 hours in one work week and the first 8 hours worked on the seventh day of work in any one workweek to be compensated at no less than one-and-a-half time; it further requires any work in excess of 12 hours in one day, or in excess of 8 hours on any seventh day, to be compensated at double time.

The FAC alleges Defendant did not pay Plaintiff overtime rates for all hours worked in excess of 8 hours in a workday, 40 hours in a workweek, or on the seventh straight day. FAC ¶ 49(a). It further alleges Defendant did not pay overtime rates for several categories of hours worked: time spent on the platform due to a reasonable inability to leave the premises; time spent on-call; time spent donning, doffing and retrieving job-related protective gear before and after shifts; handing off shifts; traveling to and back from shore; responding to alarms and fire drills.

5

*Id.* ¶ 49(a)(i)-(vii). Other than the off-time spent on the platform due to his inability to leave the premises, Plaintiff does not allege that any of the other categories of hours worked took place outside of his paid 12-hour shift. *Id.* ¶¶ 30-35, 49.

Defendant moves to dismiss Plaintiff's second cause of action for failure to pay overtime and double-time premium wages because it is exempt from providing otherwise mandatory overtime because it is subject to a collective bargaining exemption codified in the Labor Code.

The overtime requirements of Section 510 explicitly do not apply to employees working pursuant to an alternative workweek schedule under a CBA pursuant to Labor Code Section 514. Section 514 only applies where an employee is "covered by a valid [CBA]" and "the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage." Cal. Lab. Code § 514. Plaintiff does not dispute that the CBA is valid; that he is covered by the CBA; that the CBA expressly provides for the wages, hours of work, working conditions of employees; or that the CBA provides a regular hourly rate of pay for employees of not less than 30 percent more than California minimum wage. *See* Opp'n. Instead, he argues that since employees are not compensated for the hours they must remain on the platform, whether to sleep or eat, (1) the effective hourly rate is not 30 percent more than the minimum wage and (2) the CBA does not "provide[] premium wage rates for all overtime hours worked." *Id.* at 4-7.

"Employees [who are] represented by a labor union, have sought and received alternative wage protections through the collective bargaining process. When there is a valid [CBA], [e]mployees and employers are free to bargain over not only the rate of overtime pay, but also when overtime pay will begin. Moreover, employees and employers are free to bargain over not only the timing of when overtime pay begins within a particular day, but also the timing within a given week. . . . [T]he [California] Legislature made a categorical statement that 'the requirements of this section,' meaning [Section 510] as a whole, do not apply to employees with valid collective bargaining agreements." *Vranish v. Exxon Mobil Corp.*, 223 Cal. App. 4th 103, 111 (2014). The CBA here defines overtime as "those hours worked in excess of forty (40) hours

in the work week established by the client or in excess of ten (10) hours in a twenty-four (24) consecutive hour period beginning at the start of an employees scheduled work shift week[,]" and requires employees to be paid at time-and-a-half for each overtime hour. CBA Art. V & Sched. B.[2] It also provides for double time for employees who work on their seventh consecutive day in a workweek for each hour in excess of 48 hours in that work week. *Id.* While this definition is different than the definition of overtime set forth in Section 510, this is permissible under California law. *Vranish*, 223 Cal. App. 4th at 110 (parties to a CBA may define "overtime" differently than it is defined in Section 510, and Section 514 only requires the employer to pay a premium wage for overtime worked as defined in the CBA); *see also Flowers v. Los Angeles Cty. Metro. Transportation Auth.*, 243 Cal. App. 4th 66, 85 (2015) (employer was "only required to pay a premium for overtime worked as defined in the parties' CBA.").

That Plaintiff may not have been paid for overtime to which he was entitled does not change the analysis. In *Hernandez*, the plaintiff also alleged his employers failed to pay overtime wages in violation of Section 510, and the defendants argued that claim was barred by Section 514. 2017 WL 1540652, at *3. The *Hernandez* CBA provided that employees would receive time-and-a-half for hours worked in excess of 8 hours per day for employees who worked 5 days a week, 10 hours per day for employees who worked 4 days a week, and 13 hours for employees who worked 3 days a week. *Id.* The plaintiff alleged his employers failed to provide premium wages for all overtime hours because the CBA did not state whether employees would be paid overtime wages for time worked during meal periods, which he alleged he had been required to do without pay. *Id.* The court acknowledged the plaintiff may not have been paid the overtime to which he was entitled under the CBA, but found Section 514 nonetheless applied because the

---

[2] The CBA does not prescribe shift length. It defines "Daily Work Schedule" as "the number of hours an employee is scheduled to work in any workday. The company and/or customers work hours required to meet the project requirements set schedules." CBA Art. IV § C. It also authorizes split shifts "as required to meet the company and or customers project requirements." *Id.* § D. And while it provides for one day's rest in seven, it does not "prevent an accumulation of days of rest when the Company determines that the nature of the employment reasonably requires the employee to work seven (7) or more consecutive days…" *Id.* § E. Employees being dispatched to work at out of town locations are given a written dispatch before starting work, which includes "all applicable information, which will include wage rate, subsistence, travel and other conditions of work." *Id.* Art. XVI.

7

plaintiff had "not identified anything which calls the CBA's plain language—requiring overtime wages for all work performed in excess of 8, 10, or 13 hours—into question." *Id.*

The court in *Angeles v. U.S. Airways, Inc.*, 2013 WL 622032, at *5 (N.D. Cal. Feb. 19, 2013), found Section 514 did not apply because the CBAs at issue in that case explicitly denied premium compensation for overtime hours worked pursuant to a shift trade and thus did not provide premium wages for all overtime hours worked. The CBAs "clearly envision[ed] situations where shift trades will result in overtime hours without overtime pay. Indeed, that is what Plaintiffs allege happened here. Because the CBAs provide premium wage rates for only some overtime hours worked, the Court finds that Labor Code section 514 does not exempt Defendant from compliance with Labor Code section 510." *Id.*

The *Hernandez* Court found *Angeles* inapposite because the *Hernandez* plaintiff "ha[d] pointed to no similar limiting provision in the CBA[.]" 2017 WL 1540652, at *3; *see also Perez v. Leprino Foods Co.*, 2017 WL 6540512, at *5 (E.D. Cal. Dec. 21, 2017) (Section 514 did not apply where "[o]n the face of the CBA, it is clear that it does not require Leprino to pay a premium rate for all overtime hours worked, to wit donning and doffing time is not counted as hours worked for purposes of overtime calculation.").

Plaintiff relies on *Sperry v. Securitas Security Services, USA, Inc.*, 2014 WL 1664916, *5 (N.D. Cal. Apr. 25, 2014), for the proposition that Section 514 does not apply in cases where the employer did not compensate employees for downtime. Opp'n at 5. The CBA and side agreements in *Sperry* provided for 24-hour shifts. For each 24-hour shift, the security guards and EMTs were paid 20 hours of straight time, and not compensated for the remaining 4 hours, which were considered down time during which employees were required to stay on call. The court rejected defendants' argument that Section 514 applied because the CBA facially provided for a sufficient rate. 2014 WL 1664916, at *4 & n.3 ("This position is in tension with the Court of Appeal's admonishment that minimum wage compliance 'cannot be determined by averaging hourly compensation.' Given the California legislature's apparent intent that minimum wage compliance be assessed on an hour-by-hour basis, it makes little sense that an employer could circumscribe § 510 by drawing up a CBA providing a facially compliant 'regular rate,' only then

8

to pay that rate for just a portion of the hours worked." (quoting *Bluford v. Safeway, Inc.*, 216 Cal. App. 4th 864, 872 (2013)).

Section 514 applies where a CBA provides premium wages for all overtime hours worked and provides a regular hourly rate of not less than 130% of the minimum wage. The plain meaning of the statute does not require courts to determine whether any given employee: (1) was actually paid overtime wages for all hours worked, or (2) was paid for every regular hour worked at not less than 130% of the minimum wage. The Court declines Plaintiff's invitation to follow *Sperry* and read a new, non-existent, requirement into Section 514. *See, e.g., Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 475 (1992) ("In a statutory construction case, the beginning point must be the language of the statute, and when a statute speaks with clarity to an issue judicial inquiry into the statute's meaning, in all but the most extraordinary circumstance, is finished"); *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. . . . When the words to a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" (internal citations omitted)).

Plaintiff alleges he generally worked 12-hour shifts and was not compensated for the remaining 12 hours of the day; but he neither alleges nor argues, that on its face, the CBA excludes some overtime hours worked from premium wage rates. The CBA both provides premium wage rates for all overtime hours worked and a regular hourly rate of pay of not less than 30 percent more than the state minimum wage. Under these circumstances, the Court follows the plain language of Section 514 and the reasoning of the *Hernandez* Court.

The motion to dismiss the overtime claim is GRANTED.

### C. Failure to Provide Lawful Meal & Rest Breaks (Third Cause of Action)

Under California law, employers generally are required to provide meal and rest periods to their employees, and shall not require their employees to work during those periods. *See* Cal. Labor Code §§ 226.7, 512(a). Plaintiff alleges Defendant failed to provide legally-required meal periods of not less than 30 minutes, that any paid rest periods he received were on-duty or on-call in violation of state law, and that Defendant failed to pay him one additional hour of pay for

9

missed meal or rest periods. FAC ¶¶ 55-56, 60.

Defendant argues it is exempt from providing otherwise mandatory meal and rest breaks because it is subject to a collective bargaining exemption codified in the Labor Code and described in Wage Order 16 (8 Cal. Code Regs. § 11160(11)).[3]

1. Meal Periods

The statutory 30-minute meal period requirement does not apply to an employee, such as Plaintiff, who is considered to be employed in a construction occupation, and who is covered by a valid CBA where the CBA "expressly provides for the wages, hours of work, and working conditions of employees, and expressly provides for meal periods for those employees, final and binding arbitration of disputes concerning application of its meal period provisions, premium wage rates for all overtime hours worked, and a regular hourly rate of pay of not less than 30 percent more than the state minimum wage rate." Section 512(e). Section 512(e)(2), which became effective January 1, 2011, "provides an exception to the ordinary rule that an employer must provide meal periods of a specified time after a specified amount of work; that is, it provides that where a [CBA] meets certain requirements, subdivision (a) 'do[es] not apply.' . . . [It] authorizes collectively bargained agreements that provide alternate meal period arrangements." *Araquistain v. Pac. Gas & Elec. Co.*, 229 Cal. App. 4th 227, 236 (2014); *see also Perez v. Leprino Foods Co.*, 2018 WL 1426561, at *4 (E.D. Cal. Mar. 22, 2018) (explaining *Araquistain* expanded "on *Vranish* to explain that labor unions are also free to set the terms of meal periods, including the length and whether employees are relieved of duty in a manner that provides lesser protection than the California Labor Code would in other circumstances.").)

First, Plaintiff once more argues Section 512 does not apply because the CBA does not

---

[3] California "wage and hour claims are . . . governed by two complementary and occasionally overlapping sources of authority: the provisions of the Labor Code, enacted by the Legislature, and a series of 18 wage orders, adopted by the IWC." *Vaquero v. Stoneledge Furniture LLC*, 9 Cal. App. 5th 98, 105 (2017), *as modified* (Mar. 20, 2017), *review denied* (June 21, 2017). The California Labor Code requires employers to give their nonexempt employees meal periods and rest periods during the workday. Cal. Lab. Code §§ 226.7, 512. Labor Code section 226.7(a) prohibits an employer from requiring an employee "to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission." Wage Order 16 applies to workers in the construction trade, such as Plaintiff.

10

1  provide more than 130% of the minimum wage for each hour worked. Opp'n at 7-8. The Court
2  rejects that argument for the reasons previously articulated.

3  Second, Plaintiff correctly points out the CBA does not address meal periods. Opp'n at 8.
Defendant accuses Plaintiff of arguing "the CBA must define and provide for meal breaks in the
exact same manner as Section 512(a)'s meal break provision in order to trigger the exemption."
Reply at 4. That is not Plaintiff's argument; Plaintiff merely argues the plain reading of Section
512(e)(2) limits the exception to CBAs that "expressly provide for meal periods." Having urged
the Court to adopt a plain reading of Section 514 and Section 512(e)(2), Defendant cannot now
complain that Plaintiff asks the Court to follow the same approach. Section 512(e)(2) only applies
where the CBA "expressly provides for meal periods." The CBA does not do so – it only provides
for rest periods. It may be true that "Petrochem and the Union have at all times interpreted the
CBA as governing the provision of meal breaks" (Reply at 3 (citing I. Garcia Decl. ¶ 6)), but that
fact is not before the Court on this motion to dismiss.

Defendant cites *Araquistain* for the proposition that the CBA need not define "meal break"
in precisely the manner used in Section 512, but the CBA in *Araquistain* at least referenced meals.
*See* 229 Cal. App. 4th at 233 ("According to plaintiffs, the Agreement provides for 'meals' but not
'meal periods'; a 'meal period,' they argue, is 'a period of time—i.e., with a beginning and an end[
]—when an employee is not required to work.'"). "The question" before the Court of Appeals
was, "does a collective bargaining agreement providing that employees 'shall be permitted to eat
their meals during work hours' 'expressly provide[ ] for meal periods for those employees?" *Id.* at
237. The court concluded it did: "The parties to the Agreement expressly made alternate
arrangements to allow covered employees time to eat their meals. This conclusion comports with
the clear intent of the Legislature to afford additional flexibility with regard to the terms of
employment of employees in certain occupations, so long as their interests are protected through a
[CBA. . . . Represented employees] are free to bargain over the terms of their meal period,
including whether the meal period will be of a specified length and whether employees will be
relieved of all duty during that time." *Id.* at 238. That is a far cry from the language of the CBA
here, which does not reference either meals or eating.

11

Under these circumstances, the Court cannot find that the CBA "expressly provides" for meal periods, and thus cannot find Section 512(e) applies or that Defendant is exempt from providing meal breaks on that basis.

2. Rest Periods

Defendant argues "employees in on-site occupations in the construction or drilling industry who are covered by a CBA are not entitled to statutory rest periods." Mot. at 7 (citing Wage Order 16, 8 Cal. Code Regs. § 11160(11)(D) & (E).). Section 11160(11) ("Rest Periods") provides:

> (A) Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable, shall be in the middle of each work period. Nothing in this provision shall prevent an employer from staggering rest periods to avoid interruption in the flow of work and to maintain continuous operations, or from scheduling rest periods to coincide with breaks in the flow of work that occur in the course of the workday. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time for every four (4) hours worked, or major fraction thereof. Rest periods shall take place at employer designated areas, which may include or be limited to the employees immediate work area.
>
> (B) Rest periods need not be authorized in limited circumstances when the disruption of continuous operations would jeopardize the product or process of the work. However, the employer shall make-up the missed rest period within the same work day or compensate the employee for the missed ten (10) minutes of rest time at his or her regular rate of pay within the same pay period.
>
> (C) A rest period need not be authorized for employees whose total daily work time is less than three and one-half (3 1/2) hours. Authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages.
>
> (D) If an employer fails to provide an employee a rest period in accordance with the applicable provisions of this Order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each work day that the rest period was not provided. In cases where a valid collective bargaining agreement provides final and binding mechanism for resolving disputes regarding enforcement of the rest period provisions, the collective bargaining agreement will prevail.
>
> (E) This section shall not apply to any employee covered by a valid collective bargaining agreement if the collective bargaining agreement provides equivalent protection.

Defendant argues the rest period provision in the CBA provides equivalent provisions

12

(CBA, Art. IV § F), including a final and binding mechanism for resolving disputes regarding enforcement of the rest period provision (*id.*, Art. XI). Mot. at 8; Reply at 5-6. Plaintiff argues the CBA does not provide "equivalent protections" because it does not require employers to provide an additional hour of pay for failing to provide a rest period. Opp'n at 8. The CBA authorizes employees to take a 10 minute rest break for every 4 hours worked (or major portion thereof), at employer-designated areas, but these breaks need not be authorized in limited circumstances when they would jeopardize the product or process of work. CBA, Art. IV § F. This language mirrors the protections found in Section 11160(11)(A) and (B). However, the CBA does not mirror two other protections provided in Wage Order 16. First, Section 11160(11)(B) requires the employer to make up any missed rest period within the same work day or compensate the employee for the missed time at a regular rate of pay. Second, Section 11160(11)(D) requires employers who fail to provide rest periods in accordance with the provisions of that section to pay the employee one hour of pay at the regular rate of compensation for each workday that the rest period was not provided.[4] Defendant cites *Zayerz v. Kiewit Infrastructure West*, 2018 WL 582318, *4-5 (C.D. Cal. Jan. 18, 2018), where "the court granted summary judgment in favor of the employer on claims for rest break violations on the grounds that the employee was covered by a valid CBA that offered equivalent protections as that found in Wage Order No. 16." Reply at 5. But *Zayerz* does not discuss the protections identified above; it also is not binding upon this Court.[5]

---

[4] Despite the wording of Section 1160(11)(D), Defendant argues the section "does not speak to the provision of an additional hour of pay remedy. Rather, it provides only that 'where a valid collective bargaining agreement provides final and binding mechanism for resolving disputes regarding enforcement of the rest period provisions, the collective bargaining agreement will prevail.'" Reply at 4.

[5] None of the authorities Plaintiff cites address the collective-bargaining exemption described in Section 11160(11)(E). *See* Opp'n at 8 (arguing rest period requirements are non-waivable state-mandated standards). The California Court of Appeal found Section 11160(*10*)(E), which provided a similar exception with respect to meal breaks, was invalid because it conflicted with Labor Code Section 512(a). *See Bearden v. U.S. Borax, Inc.,* 138 Cal. App. 4th 429, 435-40 (2006); *Lazarin v. Superior Court*, 188 Cal. App. 4th 1560, 1577 (2010). *Bearden* and *Lazarin* were both decided before Section 512 was amended to add Section 512(e). *See* CIVIL RIGHTS--MEAL PERIOD--EXEMPTIONS, 2010 Cal. Legis. Serv. Ch. 662 (A.B. 569). The amended Section 512 became effective January 1, 2011 and thus applies here. Section 512(e) addresses only meal periods; it does not address rest periods. Neither party addresses whether *Bearden* and

13

On balance, and at this stage in the proceedings, the Court finds the FAC sufficiently alleges that the protections offered by the CBA are not equivalent to those found in Wage Order No. 16. The Court therefore finds Defendant is not exempt and DENIES the motion to dismiss on that ground.

3. Preemption

Defendant alternatively argues Plaintiff's meal and rest-breaks claims are preempted under Section 301 of the LMRA because they exist solely as a result of the CBA, or depend on an interpretation of the CBA. Mot. at 10-11. Having found that Defendant was not exempt from providing statutory meal or rest breaks, the Court necessarily finds Plaintiff's right to meal and rest breaks do not exist solely as a result of the CBA. Those claims therefore only will be preempted if they are substantially dependent on any portion of the CBA. *See supra* at pp. 4-5.

Plaintiff alleges Defendant failed to provide him with meal periods for every 5-hour period and to provide rest periods for every 4 hours of work "because [he] could not reasonably leave the work premises and [was] not relieved of all duty and subject to [his] employer's control for [his] meal and rest periods." FAC ¶ 60. Courts have routinely held that California wage and hour claims are not preempted in similar circumstances. *See, e.g.*, *Livadas v. Bradshaw*, 512 U.S. 107, 124-25 (1994) (no LMRA preemption because the plaintiff's wage and hour claim raised "a question of state law, entirely independent of any understanding embodied in the collective-bargaining agreement between the union and the employer"); *Gregory v. SCIE, LLC*, 317 F.3d 1050, 1053 (9th Cir. 2003) ("The dispute between the parties may require interpretation of the

---

*Lazarin* suggests Section 11160(*11*)(E) would be found invalid, especially in light of the California Legislature's failure to amend the Labor Code to provide a statutory exemption for rest breaks, as it did for meal breaks. None of the remaining authorities Plaintiff cites elucidate the issue. In *Cicairos v. Summit Logistics, Inc.*, 133 Cal. App. 4th 949 (2005), the Court of Appeal analyzed the application of a different wage order and also found the CBA did not mandate the arbitration of statutory rights. In *Zavala v. Scott Brothers Dairy, Inc.*, 143 Cal. App. 4th 585 (2006), the court similarly concluded the CBA did not mandate arbitration of statutory wage claims because those rights were non-waivable; it did not address the collective-bargaining exemption at issue here. And in *Valles v. Ivy Hill Corp.*, 410 F.3d 1071, 1082 (9th Cir. 2005), the Ninth Circuit reiterated the Supreme Court's holding that Section 301 of the LMRA "'cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law.'" *Id.* (quoting *Livadas*, 512 U.S. at 123).

14

words "any work" in the statute, but its resolution does not require reference to, much less interpretation of, the CBA."); *Angeles*, 2013 WL 622032, at *5-7 ("Defendant allegedly violated a state law obligation to provide proper overtime compensation independent of its obligation under the CBA, and therefore [LMRA] preemption is not appropriate.... [r]esolving Plaintiffs' overtime claim only requires the Court to determine how many hours Plaintiffs worked and what Plaintiffs' wages were in relation to those set forth by state law.").

This conclusion is reinforced by Defendant's failure to identify provisions that the Court will need to interpret, rather than simply refer to, in deciding Plaintiff's claims. For example, because the CBA does not address meals or meal periods, the Court will not be required to interpret the terms of the CBA to determine whether the claim is preempted. *Supra.* To the extent Defendant argues the parties have interpreted the rest break provision to apply equally to meal breaks (*see* Mot. at 14; Reply at 3), those facts are not properly before the Court on a motion to dismiss (*see supra* at 11). And while the CBA does address rest periods, the Court agrees that Defendant has failed to explain what substantive interpretation of the CBA will be required. The Court cannot find Plaintiff's meal and rest breaks are preempted by the LMRA.

The motion to dismiss the meal period and rest break claim is DENIED.

**D.     UCL Claim (Fourth Cause of Action)**

Plaintiff alleges Defendant's willful failure to pay overtime, double-time, and meal and rest period premium wages under California law constitute unfair business practices under the UCL. FAC ¶ 67. Defendant profited from breaking these laws, and Plaintiff seeks disgorgement of the unlawfully obtained profits. *Id.* ¶ 68. Plaintiff alleges he has suffered injury in fact and has lost money as a result of the unfair competition, and requests an order of restitution as well as an injunction. *Id.* ¶ 70. Remedies for a private plaintiff asserting a UCL claim are generally limited to restitution and injunctive relief. *See Clark v. Superior Court*, 50 Cal.4th 605, 610 (2010).

Defendant moves to dismiss the UCL claim to the extent it is based on the minimum wage, overtime, and meal/rest-break claims, and also because Labor Code Section 226.7(c) payments are

not subject to restitution.[6] The Court need not at this stage decide whether penalties under Labor Code § 226.7 are wages that may be recovered as restitution or liquidate damages that are not. *See* Mot. at 16-18; Opp'n at 20-21. The FAC does not specifically seek disgorgement of the additional hour provided by Section 226.7(c), it seeks disgorgement of any benefit Defendant obtained from "willfully fail[ing] to pay Plaintiff . . . overtime, double-time, meal, and rest period premium wages under California law." FAC ¶¶ 67-68; *see also id.*, Prayer for Relief. The Court already declined to dismiss the minimum wage and meal/rest-break claims, and thus declines to dismiss the UCL claim to the extent it is based on those violations. Thus, regardless of whether the additional hour provided by Section 226.7(c) is recoverable under the UCL, Plaintiff states a UCL claim.

The motion to dismiss the UCL claim is DENIED as described herein.

### E. Waiting Time Penalties (Fifth Cause of Action)

California Labor Code § 201 requires that employers to pay employees unpaid earned wages immediately upon termination. If an employer willfully fails to pay under Section 201, Section 203 provides that, "the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." "The settled meaning of 'willful,' as used in section 203, is that an employer has intentionally failed or refused to perform an act which was required to be done." *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1201 (2008) (citing *Barnhill v. Robert Saunders & Co*., 125 Cal. App. 3d 1, 7-8 (1981)).

Plaintiff alleges Defendant willfully failed to pay him wages owed at his termination, in violation of California Labor Code section 203. FAC ¶¶ 72-76. Plaintiff neither identifies the type of wages owed to him, nor any facts to support his conclusory allegation that "Defendants are aware that they owe the wages claimed, yet have willfully failed to make payment." *Id.* ¶ 74; *see also id.* ¶ 73 ("Defendants have willfully failed to pay"); *id.* ¶ 75 ("As a result of Defendants

---

[6] Labor Code section 226.7(c) provides that an employer who fails to provide an employee with a meal or rest period in accordance with state law, shall pay the employee one additional hour of pay at regular rate for each workday that the meal or rest period is not provided.

16

willful failure to pay. . ."). For example, the FAC does not allege the wages owed are for work performed during the compensated 12-hour shifts, or for the uncompensated 12-hours during which Plaintiff could not leave the platform.

Merely alleging willfulness is insufficient to satisfy Rule 8; rather, Plaintiff must support that allegation with facts. *Suarez v. Bank of Am. Corp.*, 2018 WL 2431473, at *9 (N.D. Cal. May 30, 2018) (citing *Ritenour v. Carrington Mortg. Servs. LLC*, 228 F. Supp. 3d 1025, 1033 (C.D. Cal. 2017) (dismissing "causes of action for failure to pay wages timely upon discharge and during employment [where complaint] contain[ed] no description of what wages were due, when they were due, and when, if at all, they were paid") and *Clark v. EmCare, Inc.*, 2017 WL 1073342, at *6 (C.D. Cal. Mar. 21, 2017) (dismissing waiting time penalty claim where "[p]laintiff d[id] not provide any facts in support of her argument that [defendant] willfully failed to compensate her upon discharge" because "[a]llegations that repeat the statutory language are insufficient")); *Perez v. Performance Grp., Inc.*, 2016 WL 1161508, at *5 (N.D. Cal. Mar. 23, 2016) (conclusory allegations that "merely parrot the statutory language, fail[] to allege specific facts showing a willful refusal to pay wages after Plaintiff's termination."). While Plaintiff need not plead willfulness with specificity, he must plead allegations sufficient to show this claim is plausible. At this point, he has not done so.

The motion to dismiss the Section 203 claim is GRANTED.

**F.  Contractual Exhaustion**

Defendant originally argued that Plaintiff was required to exhaust his administrative remedies before filing his lawsuit (Mot. at 15), but essentially abandoned that argument in its Reply (Reply at 5, n.4). The CBA here only addresses the arbitration of "grievances", which are defined as "controversies" that involve "the interpretation of alleged violation of any provision or intent of this Agreement." CBA Arts. X & XI. These provisions do not explicitly waive Plaintiff's rights to bring statutory claims in a judicial forum; as such, Plaintiff cannot be found to have clearly and unmistakably waived his right to do so. *See Wright v. Universal Maritime Serv. Corp.*, 525 U.S. 70, 80 (1998) ("[T]he right to a federal judicial forum is of sufficient importance to be protected against less-than-explicit union waiver in a CBA."); *Metropolitan Edison Co. v.*

1  *NLRB*, 460 U.S. 693, 708 (1983) ("[W]e will not infer from a general contractual provision that

2  the parties intended to waive a statutorily protected right unless the undertaking is 'explicitly

3  stated.' More succinctly, the waiver must be clear and unmistakable."); *cf. Austin v. Owens-*

4  *Brockway Glass Container, Inc.*, 78 F.3d 875, 879 (9th Cir1996) (holding that the plaintiff's claim

5  under the ADA was subject to CBA's grievance procedure where CBA required that "[t]his

6  Contract shall be administered in accordance with the applicable provisions of the [ADA]").

### G. Injunctive Relief

Defendant moves to dismiss Plaintiff's request for injunctive relief on the ground he lacks standing to pursue such relief. Mot. at 20.

It is undisputed that Plaintiff is no longer employed by Defendant. *See* FAC ¶ 12 (Plaintiff stopped working for Defendant in March 2016). The Ninth Circuit has held that "[a] former employee currently seeking to be reinstated or rehired may have standing to seek injunctive relief against a former employer. But a former employee has no claim for injunctive relief addressing the employment practices of a former employer absent a reasonably certain basis for concluding he or she has some personal need for prospective relief." *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 865 (9th Cir. 2017) (internal citations omitted); *see also Davidson v Kimberly-Clark Corp.*, 873 F.3d 1103, 1113 (9th Cir. 2017) (threat of future injury cannot be "conjectural or hypothetical" but must be "certainly impending" to constitute injury in fact supporting injunctive relief). That Plaintiff purports to represent a class in this action does not alter the analysis. *See Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1021 (9th Cir. 2004) (explaining a plaintiff may have standing in state court to seek such relief, but nonetheless may be unable to establish Article III standing to pursue injunctive relief in federal court because he cannot demonstrate real or immediate threat of irreparable injury); *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999) ("Unless the named plaintiffs are themselves entitled to seek injunctive relief, they may not represent a class seeking that relief."); *Cunha v. IntelliCheck, LLC*, 254 F. Supp. 3d 1124, 1138 (N.D. Cal. 2017) ("In a class action, a plaintiff 'cannot rely on the prospect of future injury to unnamed class members if they cannot establish they have standing to seek injunctive relief.'"). Plaintiff does not allege he may seek future employment with

Defendant. He therefore lacks Article III standing to seek injunctive relief because he cannot demonstrate a credible threat of future injury.

The motion to dismiss Plaintiff's request for injunctive relief is GRANTED.

## CONCLUSION

Defendant's motion to dismiss is granted in part and denied in part. The second and fifth causes of action are dismissed with leave to amend. The request for injunctive relief is dismissed without leave to amend with respect to Mr. Mauia; if a plaintiff with standing to seek such relief joins the action, he or she may seek leave to amend the pleadings at that time.

Any amended pleading is due within 14 days of the date of this Order. Responses will be due within 14 days thereafter.

**IT IS SO ORDERED.**

Dated: July 3, 2018

_____
MARIA-ELENA JAMES
United States Magistrate Judge