UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IAFETA MAUIA,<br><br>    Plaintiff,<br><br>    v.<br><br>PETROCHEM INSULATION, INC.,<br><br>    Defendant. | Case No. 18-cv-01815-MEJ<br><br>**ORDER RE: MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Re: ECF No. 24 |

## INTRODUCTION

Pending before the Court is Defendant Petrochem Insulation, Inc.'s Motion to Dismiss pursuant to Federal Rule of Civil Procedure (Rule) 12(b)(6), and/or Strike pursuant to Rule 12(f). Mot., ECF No. 24. Plaintiff Iafeta Mauia filed an Opposition (ECF No. 25) and Defendant filed a Reply (ECF No. 27). The Court finds this matter suitable for disposition without oral argument and **VACATES** the September 6, 2018 hearing. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7-1(b). Having considered the parties' positions, the relevant legal authority, and the record in this case, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion for the following reasons.

## BACKGROUND

**A. Factual Background**

The Court accepts the following allegations as true for the purpose of resolving this Rule 12(b)(6) motion. *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir.1996).

Defendant provides services to drilling operations off the California coast, including on fixed oil platforms on the Outer Continental Shelf. Sec. Am. Compl. (SAC) ¶ 2, ECF No. 22. Defendant employs hourly employees who work on these oil platforms and travel between them

when necessary. *Id.* Defendant mandates that these hourly workers perform their work in "hitches," which are multiple-day shifts (varying in length) that begin and end in California and are also spent either on vessels traveling to, back from, or between oil platforms or on the oil platforms themselves. *Id.* The employees' hitches begin on California soil, where the employees wait for a vessel to transport them to an oil platform. *Id.* ¶ 3. While they wait, Defendant mandates the employees attend safety briefings, after which the employees board their vessel and travel to an oil platform on the Outer Continental Shelf. *Id.* Some employees travel to and back from their designated platform by helicopter, although the process is similar to trips aboard a vessel, with the primary difference being the length of the trip. *Id.* ¶ 4. Regardless of which method of travel the employees take to their platform, it is impossible for them to take their own vessel and/or helicopter to reach the platform; they must use the transportation provided by Defendant. *Id.* ¶ 5. During these hitches, employees cannot realistically leave their vessel, helicopter, or oil platform. *Id.* ¶ 6. Their confinement ends only upon their return to California soil, when they disembark from the vessel or helicopter. *Id.*

Plaintiff worked as an Onsite Project Manager/Superintendent on scaffolding projects for Defendant until March 2016. *Id.* ¶¶ 12-13. He was an hourly employee. *Id.* ¶ 28. During his employ, he was assigned to work on several off-shore oil platforms in the California coastal waters. *Id.* ¶¶ 11, 30. Each of his "hitches" aboard the platforms typically lasted seven days, but were sometimes longer. *Id.* ¶ 31. He alleges that, even though he was on the platform for the duration of each hitch, he "typically received pay for only 12 hours each day while on the oil platforms, but nothing for the remaining 12 hours of restricted/controlled stand-by which were also spent on the platforms." *Id.* ¶ 32. On this basis, Plaintiff alleges he did not receive compensation for all hours worked on the platform. *Id.* ¶ 33. And because he could not leave the platform during his meal or rest periods, he alleges he remained on duty or on call during those times. *Id.* ¶ 36. He alleges that, as such, Defendant was required to pay him one extra hour of pay for each on duty meal or rest period, and that Defendant failed to do so. *Id.* ¶¶ 37-38. Plaintiff also alleges he was denied accurate pay stubs. *Id.* ¶ 39.

From May 7, 2012 through December 31, 2015, Defendant was party to a collective

2

bargaining agreement (CBA) with a labor union of which Plaintiff was a member. Req. for Judicial Notice, Ex. A, ECF No. 24 at ECF pp. 33-66.[1]

**B.     Procedural Background**

On February 20, 2018, Plaintiff filed a Complaint against Defendant in the Contra Costa County Superior Court, which Defendant removed to this Court on March 23, 2018. ECF No. 1. On April 19, 2018, Plaintiff filed a First Amended Complaint asserting the following claims on behalf of himself and a putative class of other similarly situated persons: (1) failure to pay minimum wage in violation of California Labor Code sections 1194 and 1197; (2) failure to pay overtime and double-time premium wages in violation of California Labor Code section 510 and 8 California Code of Regulations section 11160, subd. 3(A); (3) failure to provide lawful meal and rest periods in violation of California Labor Code sections 226.7, 512, and 8 California Code of Regulations section 11160, subd. 3(A); (4) unfair competition pursuant to California Business and Professions Code section 17200 (UCL); and (5) willfully failing to pay final wages to Plaintiff within 72 hours of his leaving Defendant's employ, in violation of California Labor Code section 203. ECF No. 10.

On May 10, 2018, Defendant moved to dismiss Plaintiff's First Amended Complaint on the grounds that Plaintiff's overtime and double time claims failed as a matter of law because Plaintiff is exempt from the statutory overtime requirements of the California Labor Code given that he is subject to a CBA that satisfies all of the statutory elements for exemption under Section 514. ECF No. 14. Defendant alternatively moved to dismiss the overtime and double time claims on the grounds that they were preempted under section 301 of the Labor Management Relations Act of 1945, 29 U.S.C. § 185, *et seq.* (LMRA) because they existed solely as a result of the CBA

---

[1] The Court takes judicial notice of the CBA. *See Hernandez v. Sysco Corp.*, 2017 WL 1540652, at *3 (N.D. Cal. Apr. 28, 2017) ("A court may take judicial notice of a CBA in evaluating a motion to dismiss."); *Johnson v. Sky Chefs, Inc.*, 2012 WL 4483225, at *1 n.1 (N.D. Cal. Sept. 27, 2012) ("Courts routinely take judicial notice of the governing collective bargaining agreement where necessary to resolve the issue of preemption" (citing *Tran v. Univ. of Cal. San Francisco*, 2007 WL 963222, at *2 n.1 (N.D. Cal. Mar. 29, 2007)); *see also Hall v. Live Nation Worldwide, Inc.*, 146 F. Supp. 3d 1187, 1193 (C.D. Cal. 2015) (court may look beyond face of complaint to determine whether claims alleged as state law causes are in fact federal claims, even on motion to dismiss)).

3

or were substantially dependent upon and intertwined with the terms of the CBA. *Id.*

On July 3, 2018, the Court issued an order granting in part and denying in part Defendant's motion. ECF No. 21 (MTD Order). The Court denied Defendant's motion as to Plaintiff's failure to pay minimum wage claim, finding Defendant had failed to show it is substantially dependent upon interpretation of the CBA and thereby preempted by the LMRA. MTD Order at 4-5. As to his second claim for failure to pay overtime and double-time premium wages, the Court granted Defendant's motion, finding Plaintiff was exempt under California Labor Code section 514 because the CBA provides for payment of a premium wage for all overtime hours worked and a payment of hourly wages not less than 130% of the minimum wage rate. *Id.* at 9. As to Plaintiff's third claim, the Court denied Defendant's motion, finding Plaintiff sufficiently alleged Defendant was not exempt from providing meal and rest breaks. *Id.* at 10-14. As to Plaintiff's fourth claim under the UCL, the Court denied Defendant's motion to dismiss on derivative grounds, given that it declined to dismiss the minimum wage and meal/rest-break claims. *Id.* at 15-16. As to Plaintiff's fifth claim for waiting time penalties, the Court granted Defendant's motion, finding Plaintiff had failed to establish willfulness on Defendant's part, and therefore failed to plead allegations sufficient to show his claim was plausible. *Id.* at 16-17. Finally, the Court granted Defendant's motion to dismiss Plaintiff's request for injunctive relief, finding he could not demonstrate a credible threat of future injury and therefore lacked standing to seek such relief. *Id.* at 18-19. The Court granted Plaintiff leave to amend his second and fifth causes of action. *Id.* at 19.

Plaintiff filed his Second Amended Complaint on July 17, 2018, asserting the same five claims on behalf of himself and a putative class of other similarly situated persons. SAC ¶¶ 40-91.

On July 31, 2018, Defendant filed the present Motion to Dismiss and/or Motion to Strike, seeking dismissal of the second, fourth, and fifth claims, and requesting the Court strike Plaintiff's allegation regarding a .

**LEGAL STANDARD**

**A.    Rule 12(b)(6)**

Rule 8(a) requires that a complaint contain a "short and plain statement of the claim

4

showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations and citation omitted).

A court may dismiss a complaint under Rule 12(b)(6) when it does not contain enough facts to state a claim to relief that is plausible on its face. *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citations and parentheticals omitted).

In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *Id.* at 550; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007). In addition, courts may consider documents attached to the complaint. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) (citation omitted).

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotations and citations omitted). However, the Court may deny leave to amend for a number of reasons, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

5

**B.     Rule 12(f)**

Federal Rule of Civil Procedure 12(f) allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Immaterial matters are "those which ha[ve] no essential or important relationship to the claim for relief or the defenses being pleaded." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994) (internal quotation marks omitted). Impertinent matters "do not pertain, and are not necessary, to the issues in question." *Id.* (internal quotation marks omitted).

The purpose of a Rule 12(f) motion "is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (internal quotation marks omitted). "Motions to strike are generally disfavored and 'should not be granted unless the matter to be stricken clearly could have no possible bearing on the subject of the litigation.'" *Luxul Tech. Inc. v. NectarLux, LLC*, 2015 WL 4692571, at *3 (N.D. Cal. Aug. 6, 2015) (quoting *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004)). The decision to grant a motion to strike ultimately lies within the discretion of the trial court. *Rees v. PNC Bank, N.A.*, 308 F.R.D. 266, 271-72 (N.D. Cal. 2015) (citing *Whittlestone*, 618 F.3d at 973); *see Whittlestone*, 618 F.3d at 973 ("We review the district court's decision to strike matter pursuant to Federal Rule of Civil Procedure 12(f) for abuse of discretion." (internal quotation marks omitted)).

## DISCUSSION

**A.     Failure to Pay Overtime and Double-Time Premium Wages (Second Cause of Action)**

Plaintiff alleges Defendant did not pay him and putative class members overtime rates for all hours worked. SAC ¶ 56(a). He further alleges Defendant did not pay overtime rates for several categories of hours worked: time spent on the platform due to a reasonable inability to leave the premises; time spent on-call; time spent donning, doffing and retrieving job-related protective gear before and after shifts; handing off shifts; traveling to and back from shore; responding to alarms and fire drills. *Id.* ¶ 56(a)(i)-(vii). Plaintiff also alleges Defendant did not compensate him and putative class members for all time spent working tasks described above,

some of which are believed to have occurred outside of the 12-hour shift for which Plaintiff and putative class members were typically paid. *Id.* ¶ 57.

Defendant moves to dismiss Plaintiff's second cause of action, arguing Plaintiff falls within statutory exceptions for employees who are subject to CBAs. Mot. at 7.

California Labor Code Section 510 requires employers to pay any work in excess of 8 hours in one work day and any work in excess of 40 hours in one work week and the first 8 hours worked on the seventh day of work in any one workweek to be compensated at no less than one-and-a-half time; it further requires any work in excess of 12 hours in one day, or in excess of 8 hours on any seventh day, to be compensated at double time. However, the overtime requirements of Section 510 explicitly do not apply to employees working pursuant to an alternative workweek schedule under a CBA pursuant to Labor Code Section 514. Section 514 only applies where an employee is "covered by a valid [CBA]" and "the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage." Cal. Lab. Code § 514.

As an initial matter, the Court has already held in its MTD Order that the CBA provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage.."[2] MTD Order at 6. Plaintiff also concedes he is a party to the CBA. Opp'n at 2; *see also* SAC ¶ 50. Thus, the question for exemption under Section 514 is whether the CBA "provides for the wages, hours of work and working conditions of the employees."

Plaintiff argues the CBA does not comply with the requirements of Section 514 because it does not expressly provide for hours of work, as alleged in his SAC. Opp'n at 9 (citing SAC ¶

---

[2] Under the law of the case doctrine, a court's prior decision regarding a question of law or fact "should continue to govern the same issues in subsequent stages in the same case." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988). This well-established rule "promotes the finality and efficiency of the judicial process by 'protecting against the agitation of settled issues.'" *Id.* (quoting 1B J. Moore, J. Lucas, & T. Currier, Moore's Federal Practice ¶ 0.404[1], p. 118 (1984)). "Failure to apply the doctrine of the law of the case absent one of the requisite conditions [not applicable here] constitutes an abuse of discretion." *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997).

52). He maintains "it is impossible to determine from the plain language of the CBA which hours [he] or the class members worked or were expected to work, and thus, which specific hours they could expect to receive payment." *Id.* Plaintiff admits there is a section in the CBA entitled "Hours of Work," but argues "it is completely void of any reference to actual hours of work. Nor does it even provide an anticipated/estimated hours of work for each day." *Id.* He contends Defendant's use of the mandated terms in a sub-heading does not mean the CBA addresses the issue. *Id.* Plaintiff also argues the CBA does not comply with the requirements of Section 514 because it does not expressly provide for working conditions, which he alleges in his SAC. *Id.* at 11 (citing SAC ¶ 53). He notes that "[n]owhere in the CBA is there any description of the working conditions facing Mauia and the class members. There is no mention of the platforms; no mention of transportation to and from the platforms; no mention of job duties; no mention of freedoms and limitations over Mauia and the class. The words 'working conditions' never appears in the CBA, and there is no analogous section." *Id.*

Employees who are represented by a labor union "have sought and received alternative wage protections through the collective bargaining process." *Firestone v. S. Cal. Gas Co.*, 219 F.3d 1063, 1067 (9th Cir. 2000). Thus, "[w]hen there is a valid [CBA], [e]mployees and employers are free to bargain over not only the *rate* of overtime pay, but also *when* overtime pay will begin." *Vranish v. Exxon Mobil Corp.*, 223 Cal. App. 4th 103, 111 (2014) (emphasis in original; citation omitted). "Moreover, employees and employers are free to bargain over not only the timing of when overtime pay begins *within a particular day*, but also the timing *within a given week*. . . . [T]he [California] Legislature made a categorical statement that 'the requirements of this section,' meaning [section 510] *as a whole*, do not apply to employees with valid collective bargaining agreements." *Id.* (emphasis in original; citation omitted).

Here, the CBA defines overtime as "those hours worked in excess of forty (40) hours in the work week established by the client or in excess of ten (10) hours in a twenty-four (24) consecutive hour period beginning at the start of an employees scheduled work shift week[,]" and requires employees to be paid at time-and-a-half for each overtime hour. CBA Art. V & Sched.

B.[3] It also provides for double time for employees who work on their seventh consecutive day in a workweek for each hour in excess of 48 hours in that work week. *Id.* While this definition is different than the definition of overtime set forth in Section 510, this is permissible under California law. *Vranish*, 223 Cal. App. 4th at 110 (parties to a CBA may define "overtime" differently than it is defined in section 510, and section 514 only requires the employer to pay a premium wage for overtime worked as defined in the CBA); *see also Flowers v. Los Angeles Cty. Metro. Transp. Auth.*, 243 Cal. App. 4th 66, 85 (2015) (employer was "only required to pay a premium for overtime worked as defined in the parties' CBA.").

That Plaintiff may not have been paid for overtime to which he was entitled does not change the analysis. In *Hernandez v. Sysco Corporation*, the plaintiff also alleged his employers failed to pay overtime wages in violation of Section 510, and the defendants argued that claim was barred by Section 514. 2017 WL 1540652, at *3 (N.D. Cal. Apr. 28, 2017). The *Hernandez* CBA provided that employees would receive time-and-a-half for hours worked in excess of 8 hours per day for employees who worked 5 days a week, 10 hours per day for employees who worked 4 days a week, and 13 hours for employees who worked 3 days a week. *Id.* The plaintiff alleged his employers failed to provide premium wages for all overtime hours because the CBA did not state whether employees would be paid overtime wages for time worked during meal periods, which he alleged he had been required to do without pay. *Id.* The court acknowledged the plaintiff may not have been paid the overtime to which he was entitled under the CBA, but found Section 514 nonetheless applied because the plaintiff had "not identified anything which calls the CBA's plain language—requiring overtime wages for all work performed in excess of 8, 10, or 13 hours—into question." *Id.*

---

[3] The CBA does not prescribe shift length. It defines "Daily Work Schedule" as "the number of hours an employee is scheduled to work in any workday. The company and/or customers work hours required to meet the project requirements set schedules." CBA Art. IV § C. It also authorizes split shifts "as required to meet the company and or customers project requirements." *Id.* § D. And while it provides for one day's rest in seven, it does not "prevent an accumulation of days of rest when the Company determines that the nature of the employment reasonably requires the employee to work seven (7) or more consecutive days…" *Id.* § E. Employees being dispatched to work at out of town locations are given a written dispatch before starting work, which includes "all applicable information, which will include wage rate, subsistence, travel and other conditions of work." *Id.* Art. XVI.

The court in *Angeles v. U.S. Airways, Inc.*, 2013 WL 622032, at *5 (N.D. Cal. Feb. 19, 2013), found Section 514 did not apply because the CBAs at issue in that case explicitly denied premium compensation for overtime hours worked pursuant to a shift trade and thus did not provide premium wages for all overtime hours worked. The CBAs "clearly envision[ed] situations where shift trades will result in overtime hours without overtime pay. Indeed, that is what Plaintiffs allege happened here. Because the CBAs provide premium wage rates for only some overtime hours worked, the Court finds that Labor Code Section 514 does not exempt Defendant from compliance with Labor Code Section 510." *Id.*

The *Hernandez* Court found *Angeles* inapposite because the *Hernandez* plaintiff "ha[d] pointed to no similar limiting provision in the CBA[.]" 2017 WL 1540652, at *3; *see also Perez v. Leprino Foods Co.*, 2017 WL 6540512, at *5 (E.D. Cal. Dec. 21, 2017) (Section 514 did not apply where "[o]n the face of the CBA, it is clear that it does not require Leprino to pay a premium rate for all overtime hours worked, to wit donning and doffing time is not counted as hours worked for purposes of overtime calculation.").

As in his opposition to Defendant's first motion to dismiss, Plaintiff relies on *Sperry v. Securitas Security Services, USA, Inc.*, 2014 WL 1664916, *5 (N.D. Cal. Apr. 25, 2014), for the proposition that Section 514 does not apply in cases where the employer did not compensate employees for downtime. Opp'n at 7-8. The CBA and side agreements in *Sperry* provided for 24-hour shifts. For each 24-hour shift, the security guards and EMTs were paid 20 hours of straight time, and not compensated for the remaining 4 hours, which were considered down time during which employees were required to stay on call. The court rejected defendants' argument that Section 514 applied because the CBA facially provided for a sufficient rate. 2014 WL 1664916, at *4 & n.3 ("This position is in tension with the Court of Appeal's admonishment that minimum wage compliance 'cannot be determined by averaging hourly compensation.' Given the California legislature's apparent intent that minimum wage compliance be assessed on an hour-by-hour basis, it makes little sense that an employer could circumscribe § 510 by drawing up a CBA providing a facially compliant 'regular rate,' only then to pay that rate for just a portion of the hours worked." (quoting *Bluford v. Safeway, Inc.*, 216 Cal. App. 4th 864, 872 (2013)).

10

The Court previously declined Plaintiff's invitation to follow *Sperry* and does so here as well. Section 514 applies where a CBA provides premium wages for all overtime hours worked and provides a regular hourly rate of not less than 130% of the minimum wage. The plain meaning of the statute does not require courts to determine whether any given employee: (1) was actually paid overtime wages for all hours worked, or (2) was paid for every regular hour worked at not less than 130% of the minimum wage. The Court shall not read a new, non-existent, requirement into section 514. *See, e.g., Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 475 (1992) ("In a statutory construction case, the beginning point must be the language of the statute, and when a statute speaks with clarity to an issue judicial inquiry into the statute's meaning, in all but the most extraordinary circumstance, is finished"); *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. . . . When the words to a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" (internal citations omitted)).

Plaintiff alleges he generally worked 12-hour shifts and was not compensated for the remaining 12 hours of the day; but he neither alleges nor argues, that on its face, the CBA excludes some overtime hours worked from premium wage rates. The CBA both provides premium wage rates for all overtime hours worked and a regular hourly rate of pay of not less than 30 percent more than the state minimum wage. Under these circumstances, the Court follows the plain language of Section 514 and the reasoning of the *Hernandez* Court.

The motion to dismiss the overtime claim is **GRANTED**.

### B.   UCL Claim (Fourth Cause of Action)

Plaintiff alleges Defendant's willful failure to pay overtime, double-time, and meal and rest period premium wages under California law constitute unfair business practices under the UCL. SAC ¶ 75. He contends Defendant profited from breaking these laws and therefore seeks disgorgement of the unlawfully obtained profits. *Id.* ¶ 76. Plaintiff alleges he has suffered injury in fact and has lost money as a result of the unfair competition, and requests an order of restitution as well as an injunction. *Id.* ¶ 78. Remedies for a private plaintiff asserting a UCL claim are

11

generally limited to restitution and injunctive relief. *See Clark v. Superior Court*, 50 Cal.4th 605, 610 (2010).

Defendant moves to dismiss the UCL claim to the extent it is based on the minimum wage, overtime, and meal/rest-break claims, and also because Labor Code Section 226.7(c) payments are not subject to restitution.[4] Mot. at 15. "To the extent this Court finds that [Plaintiff's overtime/double-time] claim should be dismissed, Mauia concedes that the corresponding UCL claim with respect to this claims should also be dismissed." Opp'n at 21. Thus, as the Court dismissed Plaintiff's overtime claim above, the Court **GRANTS** Defendant's motion to dismiss Plaintiff's UCL claim to the extent it is based on his overtime/double-time claim.

However, Defendant does not seek dismissal of Plaintiff's third claim for meal and rest period violations. "[A]n action based on [the UCL] to redress an unlawful business practice 'borrows' violations of other laws and treats these violations . . . as unlawful practices, independently actionable under section[s] 17200, [*et seq.*] and subject to the distinct remedies provided thereunder." *Farmers Ins. Exch. v. Superior Court*, 2 Cal. 4th 377, 383 (1992). Thus, Plaintiff's UCL claim "rise[s] and fall[s] with the substantive causes of action." *Tamburri v. Suntrust Mortg., Inc.*, 2011 WL 6294472, at *18 (N.D. Cal. Dec. 15, 2011). As Plaintiff's meal and rest break claim remains, dismissal of her UCL claim is inappropriate on this ground.

Further, although Defendant argues Section 226.7(c) payments are not subject to restitution, courts (including this one) have held that payments for meal and rest period premiums from Section 226.7 are, in fact, restitutionary. *See, e.g., Frausto v. Bank of Am.*, 2018 WL 3659251, at *8 (N.D. Cal. Aug. 2, 2018); *Suarez v. Bank of Am. Corp.*, 2018 WL 3659302, at *17 (N.D. Cal. Aug. 2, 2018); *Tomilson v. Indymac Bank*, 359 F. Supp. 2d 891, 896 (C.D. Cal. 2005); *Castillo*, 2018 WL 1409314, at *9. Like the plaintiffs in these cases, Plaintiff is seeking to recover wages owed under Section 226.7. As these unpaid wages belong to the employee, they may be recovered as restitution. *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 178

---

[4] Labor Code Section 226.7(c) provides that an employer who fails to provide an employee with a meal or rest period in accordance with state law, shall pay the employee one additional hour of pay at regular rate for each workday that the meal or rest period is not provided.

12

(2000); *Castillo*, 2018 WL 1409314, at *9. "An order that earned wages be paid is . . . a restitutionary remedy authorized by the UCL." *Cortez*, 23 Cal. 4th at 178. Therefore, Plaintiff can maintain a UCL claim because he is seeking restitution for wages he is owed under Section 226.7.

Accordingly, the Court **DENIES** Defendant's motion to dismiss Plaintiff's UCL claim to the extent it is based on his meal and rest break claim.

### C. Waiting Time Penalties (Fifth Cause of Action)

Plaintiff brings his fifth cause of action for waiting time penalties under Labor Code Section 203. SAC ¶¶ 79-91. Defendant moves to dismiss this claim, arguing it fails "to the extent it is wholly predicated on his claim for unpaid statutory overtime and double time." Mot. at 18. However, even though the Court has dismissed the overtime/double-time claim, Plaintiff's claim for failure to pay minimum wages remains, and that claim independently triggers waiting-time penalties under Section 203. Thus, dismissal is improper on this ground.

Defendant next argues Plaintiff fails to allege facts sufficient to support his claim, including anything more than conclusory allegations that it acted willfully. Mot. at 18-19.

Under Labor Code Section 201(a), "[i]f an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately." Employees are awarded a penalty if an employer willfully fails to pay unpaid wages pursuant to Section 201. *Id.* § 203(a). "A willful failure to pay wages within the meaning of Labor Code Section 203 occurs when an employer intentionally fails to pay wages to an employee when those wages are due." Cal. Code Regs. tit. 8, § 13520; *see Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1201 (2008) ("The settled meaning of 'willful[',] as used in section 203, is that an employer has intentionally failed or refused to perform an act which was required to be done.").

In its previous order dismissing this claim with leave to amend, the Court found Plaintiff failed to identify the type of wages owed to him or any facts "to support his conclusory allegation that 'Defendants are aware that they owe the wages claimed, yet have willfully failed to make payment.'" MTD Order at 16 (quoting FAC ¶ 74). The Court also noted the FAC did not allege the wages owed are for work performed during the compensated 12-hour shifts, or for the

uncompensated 12-hours during which Plaintiff could not leave the platform. *Id.*

In his SAC, Plaintiff alleges what unpaid wages were owing at the time of his termination – wages for "all hours he was on controlled standby-by during each multi-day hitch on the platforms off the California coast. Such hours were typically 12 each day but could sometimes vary." SAC ¶ 81. With respect to the allegations to willfulness, Plaintiff asserts Defendant "made the decision to ignore . . . California overtime and minimum wage law and, instead, chose to pay Plaintiff and the Putative Class only 12 hours (approximately) per day spent on the platforms regardless of whether they could leave the work premises during the other 12 hours (approximately) of each day." *Id.* ¶ 83. He further alleges "Defendants are aware that they owe the wages claimed yet have willfully failed to make payment." *Id.* ¶ 82.

"[I]n civil cases, the word 'willful[',] as ordinarily used in courts of law, does not necessarily imply anything blamable, or any malice or wrong toward the other party, or perverseness or moral delinquency, but merely that the thing done or omitted to be done was done or omitted intentionally. It amounts to nothing more than this: That the person knows what he is doing, intends to do what he is doing, and is a free agent." *Baker v. Am. Horticulture Supply, Inc.*, 185 Cal. App. 4th 1059, 1075 (2010), as modified on denial of reh'g (July 21, 2010). With this in mind and taking the allegations in Plaintiff's SAC as true, the Court finds Plaintiff has adequately identified the type of wages owed to him and that Defendant acted willfully.

Defendant cites three cases in support of its argument regarding Plaintiff's willfulness allegations, but its position related to those cases is unavailing. In *Brown v. Wal-Mart Stores, Inc.*, the court dismissed the plaintiffs' wage statement claim under Labor Code section 226. 2013 WL 1701581, at *8 (N.D. Cal. Apr. 18, 2013). The court held that bald allegations that "violations of the law were committed knowingly and willfully" failed to state a claim for relief. *Id.* Although the plaintiffs alleged in their opposition that the defendant "knew it was requiring [employees] to work hours for which it knew it was not paying [them], and it further knew that its wage statements were not including such earned wages," the court noted such allegations were not in their complaint, and therefore granted leave to amend. *Id.* Here, the Court agrees that bald allegations of willfulness fail to state a claim, hence dismissal of Plaintiff's FAC with leave to

14

amend. However, unlike the plaintiffs in *Brown*, the specific allegations Plaintiff now brings are in his SAC, not his Opposition. Further, as discussed above, Plaintiff provides factual support for his allegations, asserting that Defendant "chose to pay Plaintiff and the Putative Class only 12 hours (approximately) per day spent on the platforms regardless of whether they could leave the work premises during the other 12 hours (approximately) of each day." SAC ¶ 83.

Defendant also cites a Statement of Decision in *Driscoll v. Granite Rock Co.*, Santa Clara Sup. Ct. Case No. 1-08-CV-103426 (Sep. 20, 2011).[5] In *Driscoll*, the court held that a claim that an employer "knew" it violated the Labor Code did not automatically establish that the employer had committed a knowing and intentional violation. *Id.* at 23. However, the *Driscoll* court addressed the plaintiff's Section 203 claim on the merits and dismissed the claim at trial (via a formal Statement of Decision), not at the pleading stage. *Driscoll* found that "[s]ince Plaintiffs have not met their burden to prove that meals were not provided, to establish a violation rate or to demonstrate with reasonable certainty the amount of damages that should flow from any failure to provide meal periods, the Court finds that Plaintiffs are not entitled to these [Section 203] penalties." *Id.* at 20. Moreover, *Driscoll* found that "Plaintiffs did not prove that Graniterock acted 'willfully' within the meaning of Section 203." *Id.* at 21. Here, it is not for the Court to decide at the pleading stage whether Section 203's willfulness element holds merit.

Finally, Defendant cites a September 11, 2017 Minute Order issued in *Soratorio v. Tesoro Refining and Marketing Co., LLC*, C.D. Cal. Case No. 2:17-cv-01554-MSF-RAO.[6] Req. for Judicial Notice, Ex. C, ECF No. 24. In *Soratorio*, the court considered the plaintiff's allegations that Tesoro failed to pay him for "unpaid rest breaks, unpaid meal breaks, unpaid off-the-clock work, and uncompensated overtime wages . . . due to him at the time of his termination of employment," that Tesoro's failure "was willful in that [Tesoro] knew wages to be due but failed

---

[5] The Court takes judicial notice of the Statement of Decision. *See* Fed. R. Evid. 201(b); *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (Proper subjects of judicial notice when ruling on a motion to dismiss include court documents already in the public record and documents filed in other courts).

[6] The Court takes judicial notice of the Minute order. *See* Fed. R. Evid. 201(b); *Reyn's Pasta Bella*, 442 F.3d at 746 n.6. Except as addressed above, the Court does not rely on the other documents Defendant attaches to its request for judicial notice, and accordingly finds the request moot as to those.

15

to pay them" and that "[a]lthough Plaintiff and certain members of the proposed CLASS brought these issues of untimely payment upon separation of employment with [Tesoro], all such complaints proved fruitless." *Id.* at 5-6. The court dismissed the claim without leave to amend, finding the plaintiff had not plausibly alleged that Tesoro willfully failed to pay him earned wages upon the termination of his employment. *Id.* at 7. However, the minute order provides only a brief generalized factual background and it is not clear from that order what all the facts are in that case. Further, the court in *Soratorio* does not address the definition of willfulness, instead focusing on the plaintiff's failure to offer information about who members of the putative class complained to, how they complained, who they complained to, or the responses they received. As stated above, Plaintiff can succeed on his claim if he establishes that Defendant intended to pay Plaintiff and the Putative Class 12 only hours per day, regardless of whether they could leave the work premises during the other 12 hours. At this stage in the case, the Court finds Plaintiff's allegations adequate.

Accordingly, the Court **DENIES** Defendant's motion to dismiss Plaintiff's waiting time penalties claim.

**D.**     **Motion to Strike**

Finally, Defendant moves to strike Plaintiff's allegations in Paragraph 39 of the SAC, in which Plaintiff alleges: "Plaintiff was denied accurate paycheck stubs, which lacked, among other things required under California law, the requisite amount of overtime/double-time, meal period, and rest period premium wages earned each pay period." Defendant argues this paragraph should be stricken as immaterial given that Plaintiff does not purport to allege a claim for failure to provide accurate wage statements. Mot. at 2. Plaintiff "concedes that a singular erroneous reference to paycheck stub violations in paragraph 39 of the SAC should be stricken, as no such claim exists." Opp'n at 1 n.1. Accordingly, the Court **GRANTS** Defendant's motion to strike Paragraph 39.

## CONCLUSION

Based on the analysis above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion to dismiss and/or as follows:

16

1) the Court **GRANTS** Defendant's motion to dismiss Plaintiff's UCL claim as to the overtime/double-time claim.  As the pleading could not possibly be cured by the allegation of other facts, dismissal is **WITHOUT LEAVE TO AMEND**;

2) the Court **GRANTS** Defendant's motion to dismiss Plaintiff's UCL claim to the extent it is based on Plaintiff's overtime/double-time claim, but **DENIES** Defendant's motion to dismiss Plaintiff's UCL claim to the extent it is based on his meal and rest break claim;

3) the Court **DENIES** Defendant's motion to dismiss Plaintiff's waiting time penalties claim; and

4) the Court **GRANTS** Defendant's motion to strike Paragraph 39 of the SAC.

**IT IS SO ORDERED.**

Dated: August 27, 2018

_____
MARIA-ELENA JAMES
United States Magistrate Judge