UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IAFETA MAUIA,

          Plaintiff,

v.

PETROCHEM INSULATION, INC.,

          Defendant.

Case No. 18-cv-01815-TSH

**ORDER RE: MOTION FOR RECONSIDERATION**

Re: Dkt. No. 37

## I. INTRODUCTION

Plaintiff Iafeta Mauia worked for Defendant Petrochem Insulation, Inc. as an Onsite Project Manager on Petrochem's oil platforms off the California coast. Each of Mauia's "hitches" aboard the platforms typically lasted at least seven days, during which he worked twelve-hour shifts, then remained on the platform, unpaid, for the remaining twelve hours of each day. In this lawsuit, Mauia alleges several California Labor Code violations, including failure to pay overtime and double-time premium wages under Labor Code section 510. After Petrochem moved to dismiss, Magistrate Judge Maria-Elena James[1] dismissed Mauia's overtime/double-time claim without leave to amend. Mauia now seeks reconsideration of that order. For the following reasons, the Court **GRANTS** Mauia's Motion for Reconsideration and, upon reconsideration, once again **GRANTS** Petrochem's Motion to Dismiss his section 510 claim.

## II. BACKGROUND

### A. Factual Background

As Mauia's motion for reconsideration concerns Petrochem's motion to dismiss under

---

[1] Magistrate Judge James retired on August 31, 2018, after which this case was reassigned to the undersigned. ECF No. 30.

Federal Rule of Civil Procedure 12(b)(6), the Court accepts the following allegations in his Second Amended Complaint as true. *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996).

Petrochem provides services to drilling operations off the California coast, including on fixed oil platforms on the Outer Continental Shelf. Second Am. Compl. ("SAC") ¶ 2, ECF No. 22. It employs hourly employees who work on these oil platforms and travel between them when necessary. *Id.* Petrochem mandates that these hourly workers perform their work in "hitches," which are multiple-day shifts (varying in length) that begin and end in California and are also spent either on vessels traveling to, back from, or between oil platforms or on the oil platforms themselves. *Id.* The employees' hitches begin on California soil, where the employees wait for a vessel or helicopter to transport them to an oil platform on the Outer Continental Shelf. *Id.* ¶ 3. It is impossible for employees to take their own vessel or helicopter to reach the platform; they must use the transportation provided by Petrochem. *Id.* ¶ 5. During their hitches, employees cannot leave their vessel, helicopter, or oil platform. *Id.* ¶ 6.

Mauia worked as an Onsite Project Manager/Superintendent on scaffolding projects for Petrochem as an hourly employee, working off the coast of and in the State of California until March 2016. *Id.* ¶¶ 26-29. Mauia was assigned to stay overnight during his hitches on various platforms located off California's coast, namely in Santa Barbara County. *Id.* ¶ 25.

During his employment with Petrochem, Mauia sometimes worked on oil platforms in the California coastal waters, performing non-exempt work. *Id.* ¶ 30. Each of Mauia's hitches aboard the platforms typically lasted seven days but were sometimes longer. *Id.* ¶ 31. He typically received pay for only 12 hours each day while on the oil platforms, and nothing for the remaining 12 hours of restricted/controlled stand-by which were also spent on the platforms. *Id.* ¶ 32. Mauia did not receive compensation for all hours worked on the platform, namely the approximately 12 hours during each 24-hour period of each hitch that Plaintiff was required to remain on the platform on restricted/controlled stand-by. *Id.* ¶ 33.

**B.      Procedural Background**

On July 17, 2018, Mauia filed his operative Second Amended Complaint, asserting the

1   following claims on behalf of himself and a putative class of other similarly situated persons: (1)

2   failure to pay minimum wage in violation of California Labor Code sections 1194 and 1197; (2)

3   failure to pay overtime and double-time premium wages in violation of California Labor Code

4   section 510 and 8 California Code of Regulations section 11160, subd. 3(A); (3) failure to provide

5   lawful meal and rest periods in violation of California Labor Code sections 226.7, 512, and 8

6   California Code of Regulations section 11160, subd. 3(A); (4) unfair competition pursuant to

7   California Business and Professions Code section 17200 (UCL); and (5) willfully failing to pay

8   final wages to Mauia within 72 hours of his leaving Petrochem's employ, in violation of

9   California Labor Code section 203.  SAC ¶¶ 40-91.

10      On July 31, 2018, Petrochem filed a Motion to Dismiss the second, fourth, and fifth causes

11  of action.  Second Mot. to Dismiss ("SMTD"), ECF No. 24.  As part of his opposition to

12  Petrochem's motion, Mauia filed a Request for Judicial Notice in which he requested the Court

13  take notice of the following documents: (1) "Statement of the Basis" regarding the "Eighth-Hour-

14  Day Restoration and Workplace Flexibility Act," in accordance with California Labor Code

15  Section 514; and (2) "Statement as to the Basis for Wage Order No. 16 Regarding Certain On-Site

16  Construction, Drilling, Mining, and Logging Industries."  Req. for Judicial Notice, ECF No. 26.

17      On August 27, 2018, Magistrate Judge James granted Petrochem's motion as to Mauia's

18  second claim for overtime/double-time wage violations.  Second Mot. to Dismiss Order ("SMTD

19  Order"), ECF No. 28.  In discussing the second cause of action, the Court had already previously

20  held in its first Motion to Dismiss Order that the applicable collective bargaining agreement

21  ("CBA") provides premium wage rates for all overtime hours worked and a regular hourly rate of

22  pay for those employees of not less than 30 percent more than the state minimum wage.  First

23  Mot. to Dismiss Order ("FMTD Order"), ECF No. 21 at 6-7.  Thus, the remaining arguments for

24  the Court to resolve on the Second Motion to Dismiss were whether or not the CBA provides for

25  hours of work and working conditions of the employees, with Mauia arguing that it did not.  SAC

26  ¶¶ 51, 52, 53; SMTD Order at 7.  The Court proceeded to have an in-depth discussion as to why

27  the overtime provisions were properly represented within the CBA but limited the discussion on

28  hours of work and working conditions to summarizing Plaintiff's argument.  SMTD Order at 7-8.

Magistrate Judge James made no mention of Mauia's request for judicial notice which spoke to Mauia's latter two arguments.

On September 14, 2018, Mauia requested leave to file a Motion for Reconsideration pursuant to Northern District of California Civil Local Rule 7-9(b)(3) on the basis that there was a "manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the court before such interlocutory order." Mot. for Leave, ECF No. 32. The Court granted Mauia leave to file a Motion for Reconsideration. Order Granting Leave, ECF No. 34. Following that, Mauia filed his Motion for Reconsideration. Mot. for Reconsideration, ECF No. 37. In it he contends that the CBA did not expressly provide for all "hours of work" nor for the "working conditions" of the employees and that both are prerequisites for the CBA exemption under California Labor Code section 514. *Id.* at 3. Additionally, he points out that the Court's order made no ruling on his submitted Request for Judicial Notice. *Id.* at 7. Petrochem filed its opposition to the motion soon after, arguing that the Court had already considered Mauia's claims and that his Motion for Reconsideration was a mere recitation of previously asserted arguments. Opp. to Mot. for Reconsideration ("Opp. MFR"), ECF No. 46.

### III. LEGAL STANDARD

#### A. Motion for Reconsideration

Trial courts have inherent power to reconsider, set aside, or amend interlocutory orders at any time prior to entry of a final judgment. Fed. R. Civ. P. 54(b). Motions for reconsideration are disfavored and "should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *McDowell v. Calderon*, 197 F.3d 1253, 1255 (9th Cir. 1999) (per curiam) (internal quotation and citation omitted). Furthermore, "[a] motion for reconsideration 'may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation.'" *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.,* 571 F.3d 873, 880 (9th Cir. 2009) (quoting *Kona Enters., Inc. v. Estate of Bishop,* 229 F.3d 877, 890 (9th Cir. 2000)).

The Northern District of California also has local rules governing motions for

reconsideration. Under Civil Local Rule 7-9, a party must seek leave to file a motion for reconsideration before judgment has been entered. Civ. L.R. 7-9(a). Moreover, a motion for reconsideration may be made on three grounds: (1) a material difference in fact or law exists from that which was presented to the court, which, in the exercise of reasonable diligence, the moving party did not know at the time of the order for which reconsideration is sought; (2) the emergence of new material facts or a change of law; or (3) a manifest failure by the court to consider material facts or dispositive legal arguments. Civ. L.R. 7-9(b). The moving party may not reargue any written or oral argument previously asserted to the court. Civ. L.R. 7-9(c).

**B.    Motion to Dismiss**

In reconsidering the dismissal of Mauia's second claim for relief, the Court is required to view it under the Federal Rule of Civil Procedure 12(b)(6) standard. A court may dismiss a complaint under Rule 12(b)(6) when it does not contain enough facts to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citations and parentheticals omitted).

In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *Id.* at 550; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007). In addition, courts may consider documents attached to the complaint. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) (citation omitted).

United States District Court
Northern District of California

**A.     Mauia's Motion for Reconsideration**

The crux of Mauia's Motion for Reconsideration is that the Court did not consider his argument that the CBA does not provide for all hours worked nor for the working conditions of the employees.  Mot. for Reconsideration at 7.  The only specific description of those issues in the Court's order is the following, which merely summarizes Mauia's arguments:

> Plaintiff argues the CBA does not comply with the requirements of Section 514 because it does not expressly provide for hours of work, as alleged in his SAC. Opp'n at 9 (citing SAC ¶ 52). He maintains "it is impossible to determine from the plain language of the CBA which hours [he] or the class members worked or were expected to work, and thus, which specific hours they could expect to receive payment." *Id*. Plaintiff admits there is a section in the CBA entitled "Hours of Work," but argues "it is completely void of any reference to actual hours of work. Nor does it even provide an anticipated/estimated hours of work for each day." *Id*. He contends Defendant's use of the mandated terms in a sub-heading does not mean the CBA addresses the issue. *Id*. Plaintiff also argues the CBA does not comply with the requirements of Section 514 because it does not expressly provide for working conditions, which he alleges in his SAC. *Id*. at 11 (citing SAC ¶ 53). He notes that "[n]owhere in the CBA is there any description of the working conditions facing Mauia and the class members. There is no mention of the platforms; no mention of transportation to and from the platforms; no mention of job duties; no mention of freedoms and limitations over Mauia and the class. The words 'working conditions' never appears in the CBA, and there is no analogous section.

SMTD Order at 7-8.

The Court also made no ruling on the motion's accompanying Request for Judicial Notice.

In the Court's final paragraph on the issue of dismissing the second claim, there is no mention of Mauia's argument that the CBA's exclusion of working conditions and hours of work means the section 514 exemption does not apply and, instead, section 510 must apply:

> Plaintiff alleges he generally worked 12-hour shifts and was not compensated for the remaining 12 hours of the day; but he neither alleges nor argues, that on its face, the CBA excludes some overtime hours worked from premium wage rates. The CBA both provides premium wage rates for all overtime hours worked and a regular hourly rate of pay of not less than 30 percent more than the state minimum wage. Under these circumstances, the Court follows the plain language of Section 514 and the reasoning of the Hernandez Court. The motion to dismiss the overtime claim is GRANTED.

SMTD Order at 11.

On this record, it appears that the Court manifestly failed to consider these two dispositive legal arguments in determining whether the CBA meets the criteria of section 514. Accordingly, the Court **GRANTS** the motion for reconsideration.

**B.     The CBA Meets the California Labor Code Section 514 Exemption Requirement**

The Court then turns to the merits. In the second Motion to Dismiss, Petrochem argued that Mauia has no statutory claim for overtime and double-time violations because he falls within the statutory exception for employees who are subject to CBAs. SMTD at 16. In order for the claims to fall within the statutory exception, the CBA must provide for: (1) "wages," (2) "hours of work," (3) "working conditions," (4) "premium wage rates for all overtime hours worked" and (5) "a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage." Cal. Labor Code § 514. If the CBA does not provide for all of these items, then the overtime exemption does not apply and, instead California Labor Code section 510 applies. Cal. Labor Code § 514.

The substance of the current dispute is whether the CBA provides for hours of work and working conditions. The Court finds that it does. Accordingly, the CBA meets the section 514 requirements for exemption.

**1.     Hours of Work**

Article IV of the CBA is entitled "hours of work." It defines the workweek as "seven (7) consecutive day twenty-four (24) hour periods beginning at the same hour, 12:01 AM, Monday on the same day each calendar week. The week will begin on Mondays and ends on Sundays at Midnight." The CBA defines the workday as "twenty-four (24) consecutive hours beginning at the same time each calendar day. The first workday begins at the time the workweek begins, and the seventh workday ends at the time the workweek ends." The CBA then defines "daily work schedules" as "the number of hours an employee is scheduled to work in any workday. The Company and/or Customers work hours required to meet the project requirements set schedules."

The CBA therefore clearly defines a seven-day workweek and a 24-hour workday. But just as clearly, it is not possible to tell from the CBA how long an employee's shift will be in any given day. That information is expressly extrinsic to the CBA. Thus, whether the CBA provides

for the hours of work comes down to a legal question:  Does the CBA need to specify how many hours per day the employees will work?

Intuitively, it might seem like the answer is yes.  After all, if you were hired as an hourly employee at, say, a coffee shop, you would undoubtedly think that your "hours of work" are the number of hours you work at the coffee shop, and you would consider the rest of the day to be your own time.

But in this case, Mauia does *not* think the rest of the day was his own time.  When he went on his hitches with Petrochem, he was required to be on the platform 24 hours a day for a full week (or longer).  He couldn't go home, travel somewhere, visit his neighbors, go grocery shopping, or do many of the various things people do when they are not at work.  In fact, the core of his overtime/doubletime claim is that he *should* have been compensated as if he had been working 24/7.

Accordingly, the CBA's "hours of work" section does describe Mauia's hours of work:  24 hours a day, seven days a week.  The California Industrial Welfare Commission ("IWC") defines "hours worked" to "mean[] the time during which an employee *is subject to the control* of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so."  Cal. Code Regs. tit. 8, § 11040, ¶ 2(K) (emphasis added).  Here, the CBA's "hours of work" section describes when the employees were subject to the control of Petrochem – 24/7.

This Court agrees with and follows *Mireles v. Paragon Sys., Inc.*, No. 13CV122 L BGS, 2014 WL 4385453 (S.D. Cal. Sept. 4, 2014), on this issue.  In *Mireles*, the CBA defined "workweek" and "workday" the same way as here, and the CBA likewise did not "list each and every specific shift the covered employees will work."  *Id.* at *5 (citations and internal quotation marks omitted).  The *Mireles* court followed the IWC's definition of "hours worked" and held that the CBA satisfied Labor Code section 514 because the definitions of "workweek" and "workday" "inform[ed] employees of the times under which they may be subject to the control of the employer."  *Id.* (citation and quotation marks omitted).

In his opposition to Petrochem's Motion to Dismiss, Mauia requested judicial notice of (1)

8

the ICW's "Statement of the Basis" regarding the "Eighth-Hour-Day Restoration and Workplace Flexibility Act," in accordance with California Labor Code Section 514 ("Statement of Basis for AB 60"), and (2) the ICW's "Statement as to the Basis for Wage Order No. 16 Regarding Certain On-Site Construction, Drilling, Mining, and Logging Industries" ("Statement of Basis for Wage Order 16"), arguing they support his view that the CBA in this case does not provide for hours of work. Req. for Judicial Notice, ECF No. 26.[2]

The Court disagrees. Mauia relies on an identical paragraph that appears in both Statements of Basis, and in particular on the italicized language below:

> The California Labor Federation submitted testimony that Labor Code §514 was intended to permit the parties to a collective bargaining agreement to define what constitutes "overtime hours" and to determine the rate of premium pay to be paid for all overtime hours worked. The Commission agrees that § 514 permits the parties to a collective bargaining agreement to establish alternative workweek agreements through the collective bargaining process provided certain conditions are met. Thus, *so long as the collective bargaining agreement establishes regular and overtime hours within the work week*, establishes premium pay for all such hours worked, and the regular rate of pay is more than (30) percent above the minimum wage, then the exemption established by Labor Code § 514 is applicable. (emphasis added)

That language is just a reference to section 514's requirement that the CBA must "provide[] premium wage rates for all overtime hours worked and a regular hourly rate of pay." The CBA at issue here does that.[3] It defines overtime as "those hours worked in excess of forty (40) hours in the work week established by the client or in excess of ten (10) hours in a twenty-four (24) consecutive hour period beginning at the start of an employees scheduled work week shift[,]" requiring employees to be paid at time-and-a-half for each overtime hour. Furthermore, consistent with Wage Order 16's advisement, CBA Articles V and XVI contained in Schedule B

---

[2] These documents are judicially noticeable because Federal Rule of Evidence 201 allows courts to take judicial notice of a fact not subject to reasonable dispute if it: "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. A court "may properly take judicial notice of the documents appearing on a governmental website." *Cota v. Maxwell-Jolly*, 688 F. Supp. 2d 980, 998 (N.D. Cal. 2010). Both Statements of Basis appear on the ICW's website. Mauia's unopposed Request for Judicial Notice is therefore **GRANTED**.
[3] The Court already held in its first MTD Order that the CBA provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage. FMTD at 6.

of the CBA, provide established premium pay "at time and one-half their regular straight time rate for each overtime hour." The language in these Statements of Basis discussing overtime hours has nothing to do with Mauia's arguments concerning "hours of work."

Accordingly, the Court finds that the CBA does provide for hours of work.

### 2. Working Conditions

Mauia is correct that the CBA does not contain a section explicitly entitled "working conditions," like it does with "hours of work." However, as a matter of substance instead of form, there are various provisions throughout the CBA that govern working conditions. These include the following: (1) Article VIII, which addresses health and life insurance coverage that Petrochem will provide for its employees; (2) Article IX, which addresses retirement benefits available to employees and the requirements for receiving said benefits; (3) Article XVI of Schedule B to the CBA, which sets out the conditions for travel allowances; (4) Article XVII, which sets out the conditions of employment when an employee faces discharge or disciplinary action; (5) Article XVIII, which sets out conditions for leaves of absence in vacation, emergency and various other contexts; and, (4) Article XIX, which provides for the safety of employees and the tools available to them including, educational safety programs and the right for employees to request, at any time, inspection of any equipment.

In *Marquez v. Toll Global Forwarding (USA) Inc.*, the court held that CBA provisions related to sanitary conditions (Article 17) and safety (Article 18) expressly provided for "working conditions" under Section 514. 2018 WL 3218102, *2 (C.D. Cal. June 28, 2018). In *Cathcart v. Sara Lee Corp.,* the Court found that designations of when the work day began and ended, seniority rules, limitations on route reorganization, and designations of paid holidays and vacations provided for working conditions. No. C-09-5748 MMC, 2011 WL 5981849, at *3 (N.D. Cal. Nov. 30, 2011). The CBA at issue here regulates working conditions in even more detail than in *Marquez* and *Cathcart*.

Accordingly, the Court finds that the CBA does provide for working conditions.

### V. CONCLUSION

The Court **ORDERS** as follows:

(1) Plaintiff's Motion for Reconsideration, ECF No. 32, is **GRANTED.**

(2) Plaintiff's second claim for relief is **DISMISSED WITHOUT LEAVE TO AMEND.**

(3) Plaintiff's request for judicial notice, ECF No. 26, is **GRANTED.**

**IT IS SO ORDERED.**

Dated: November 21, 2018

THOMAS S. HIXSON
United States Magistrate Judge