**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| IAFETA MAUIA,<br>　　*Plaintiff-Appellee*,<br><br>　　　　v.<br><br>PETROCHEM INSULATION, INC.,<br>　　*Defendant-Appellant*. | No. 20-15810<br><br>D.C. No.<br>3:18-cv-01815-TSH<br><br>OPINION |

Appeal from the United States District Court
for the Northern District of California
Thomas S. Hixson, Magistrate Judge, Presiding

Argued and Submitted March 18, 2021
San Francisco, California

Filed July 20, 2021

Before: Mary H. Murguia and Morgan Christen, Circuit
Judges, and Barbara M. G. Lynn,[*] Chief District Judge.

Opinion by Judge Christen

---

[*] The Honorable Barbara M. G. Lynn, Chief United States District
Judge for the Northern District of Texas, sitting by designation.

2   MAUIA V. PETROCHEM INSULATION

## SUMMARY[**]

### Labor Law

The panel reversed the district court's order denying the motion of defendant Petrochem Insulation, Inc., to dismiss Iafeta Mauia's claims that Petrochem violated California's wage and hour laws by failing to provide adequate meal and rest periods to workers on oil platforms off the coast of California.

The panel held that pursuant to the Outer Continental Shelf Lands Act, all law on the Outer Continental Shelf is federal, and state law is adopted only to the extent it is applicable and not inconsistent with federal law. Under *Parker Drilling Mgmt. Servs. v. Newton*, 139 S. Ct. 1881 (2019), there must be a gap in federal law before state law will apply on the Outer Continental Shelf. The panel concluded that because the Fair Labor Standards Act addresses meal and rest periods, there was no gap in the applicable federal law.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Kent J. Sprinkle (argued), Teresa W. Ghali, and Rachel L. Capler, CDF Labor Law LLP, San Diego, California, for Defendant-Appellant.

Michael A. Strauss (argued), Aris E. Karakalos, and Andrew C. Ellison, Strauss & Strauss, Ojai, California, for Plaintiff-Appellee.

**OPINION**

CHRISTEN, Circuit Judge:

Petrochem Insulation, Inc. (Petrochem) appeals the district court's order denying its motion to dismiss Iafeta Mauia's claims alleging violations of California's wage and hour laws. Mauia alleged that Petrochem failed to provide adequate meal and rest periods to workers on oil platforms off the coast of California. Pursuant to the Outer Continental Shelf Lands Act (OCSLA), 43 U.S.C. § 1331 *et seq.*, all law on the Outer Continental Shelf (OCS) is federal; state law is adopted on the OCS only to the extent it is applicable and not inconsistent with federal law. 43 U.S.C. § 1333(a)(2)(A). The Supreme Court explained in *Parker Drilling Management Services v. Newton* that there must be a gap in federal law before state law will apply on the OCS. 139 S. Ct. 1881, 1892 (2019). Because federal law addresses meal and rest periods, we conclude there is no gap in the applicable federal law. Accordingly, we reverse the district court's order denying Petrochem's motion to dismiss Mauia's state-law claims.

4          MAUIA V. PETROCHEM INSULATION

I

Petrochem provides services to drilling operations located off the coast of California on the OCS.  Until 2016, Petrochem employed Mauia as an Onsite Project Manager/Superintendent for scaffolding projects on offshore oil platforms.  Mauia was an hourly employee and worked shifts of twelve hours or more.  He alleged that Petrochem provided only one meal period after the start of the sixth hour of his shifts, and only two rest periods per twelve-hour shift.

Mauia's operative complaint alleged that Petrochem's meal- and rest-period practices violated California law.  Specifically, Mauia alleged that by providing only one meal period that began after the sixth hour of work, Petrochem violated § 512 of the California Labor Code, which mandates that "[a]n employer shall not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes."  Cal. Lab. Code § 512(a); *see* 8 Cal. Code Regs. § 11160(10)(A).  California also requires that "[a]n employer shall not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes."  Cal. Lab. Code § 512(a); *see* 8 Cal. Code Regs. § 11160(10)(B).  Mauia sought "meal period premium wages" pursuant to state law in an amount to be determined.  *See* Cal. Lab. Code § 226.7.

Mauia also alleged that Petrochem violated California law by providing only two rest breaks during his twelve-hour shifts.  *See* 8 Cal. Code Regs. § 11160(11)(A) (requiring employers to "authorize and permit all employees to take rest periods . . . daily at the rate of ten (10) minutes net rest time for every four (4) hours worked").  As with his meal-period

MAUIA V. PETROCHEM INSULATION     5

claim, Mauia sought back-pay pursuant to Cal. Lab. Code § 226.7 for the failure to provide rest periods.  Finally, Mauia alleged that Petrochem's failure to provide meal and rest periods as required by California law amounted to unfair business practices, and he sought disgorgement and restitution.[1]  *See* Cal. Bus. & Prof. Code § 17200 *et seq.*

Petrochem moved to dismiss Mauia's state-law claims pursuant to Federal Rule of Civil Procedure 12(b)(6).  Its motion argued that California wage and hour laws are inapplicable on the OCS because the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, addresses meal and rest periods, leaving no gap for California law to fill.  *See Parker Drilling*, 139 S. Ct. at 1891.  Petrochem also urged the district court to dismiss Mauia's unfair competition claim because it was derivative of, and dependent upon, the viability of Mauia's meal-and rest-period claims.

The district court denied Petrochem's motion to dismiss.  It reasoned that neither the FLSA nor its implementing regulations address meal or rest periods because the federal regulations only concern how and when meal and rest breaks must be compensated as work time; they do not require that employers provide meal and rest breaks.  Accordingly, the district court ruled that federal law does not address Mauia's claims, and concluded that California's meal- and rest-break laws were adopted as surrogate federal law for workers on OCS drilling platforms.  For the same reasons, the court ruled that Mauia's derivative unfair competition claim survived Petrochem's motion to dismiss.

---

[1] The district court dismissed some of Mauia's other claims as untimely or because they were resolved by *Parker Drilling*.  Those claims are not on appeal.

The district court recognized that trial courts in our circuit have split on this issue, and certified its order for interlocutory review. A motions panel of our court granted Petrochem's petition for permission to appeal. We have jurisdiction pursuant to 28 U.S.C. § 1292(b), and we reverse the district court's judgment.

II

We review de novo a district court's order denying a Rule 12(b)(6) motion to dismiss. *Fortyune v. City of Lomita*, 766 F.3d 1098, 1101 (9th Cir. 2014). Our review is limited to the complaint, materials incorporated by reference into the complaint, and matters of which we may take judicial notice. *Karasek v. Regents of Univ. of Cal.*, 956 F.3d 1093, 1104 (9th Cir. 2020). We accept as true all well-pleaded factual allegations and construe them in the light most favorable to the non-moving party. *Id.* "A complaint will not survive a motion to dismiss unless it 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

III

The OCSLA, 43 U.S.C. § 1331 *et seq.*, extends "[t]he Constitution and laws and civil and political jurisdiction of the United States" to the OCS "to the same extent as if the [OCS] were an area of exclusive Federal jurisdiction located within a State." 43 U.S.C. § 1333(a)(1)(A). The OCSLA provides:

> (2)(A) To the extent that they are applicable and not inconsistent with this subchapter or

MAUIA V. PETROCHEM INSULATION        7

>with other Federal laws and regulations of the Secretary now in effect or hereafter adopted, the civil and criminal laws of each adjacent State, now in effect or hereafter adopted, amended, or repealed are declared to be the law of the United States for that portion of the subsoil and seabed of the outer Continental Shelf, and artificial islands and fixed structures erected thereon, which would be within the area of the State if its boundaries were extended seaward to the outer margin of the outer Continental Shelf . . . . All such applicable laws shall be administered and enforced by the appropriate officers and courts of the United States.

*Id.* § 1331(a)(2)(A). The Supreme Court has explained that "all law on the OCS is federal law, administered by federal officials." *Parker Drilling*, 139 S. Ct. at 1886. "The OCSLA denies States any interest in or jurisdiction over the OCS, and it deems the adjacent State's laws to be federal law '[t]o the extent that they are applicable and not inconsistent with' other federal law." *Id.* (quoting 43 U.S.C. § 1333(a)(2)(A)).

In *Parker Drilling*, the Supreme Court resolved a circuit split concerning how to determine whether a state law is "applicable and not inconsistent with . . . Federal law[]" within the meaning of the OCSLA. 43 U.S.C. § 1333(a)(2)(A); *Parker Drilling*, 139 S. Ct. at 1886–87. The Fifth Circuit had interpreted the OCSLA to require that "'applicable' be read in terms of necessity—necessity to fill a significant void or gap" in federal law. *Cont'l Oil Co. v. London Steam-Ship Owners' Mut. Ins. Ass'n*, 417 F.2d 1030, 1036 (5th Cir. 1969). Our court had interpreted the OSCLA

by giving "applicable" its plain and ordinary meaning. *See Newton v. Parker Drilling Mgmt. Servs., Ltd.*, 881 F.3d 1078, 1090 (9th Cir. 2018), *vacated and remanded by Parker Drilling*, 139 S. Ct. 1881. In *Newton*, we held that an adjacent state's law was "applicable" for purposes of the OSCLA when it "pertained to the subject matter at hand." *Id*. (citing *Applicable*, Funk & Wagnalls Standard Dictionary of the English Language (1958); *Applicable*, Webster's New World Dictionary of the American Language (1972)). We also gave "inconsistent" its ordinary meaning, and held that "applicable" state laws are "inconsistent" with federal law when they are "mutually 'incompatible, incongruous, or inharmonious.'" *Id.* at 1093 (alteration omitted) (quoting *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 874 F.3d 1083, 1095 (9th Cir. 2017) (quoting Webster's Third New Int'l Dictionary (1971))).

Much like Mauia, Newton worked on oil platforms off the coast of California. *Id.* at 1082. He worked fourteen-day shifts, with each day consisting of twelve hours on duty and twelve hours on standby. *Id.* Though Newton was paid "well above California and federal minimum wage," he was not paid for his standby time. *Id.* We reasoned in *Newton* that California's minimum-wage and standby-time laws were applicable to the parties' dispute, and that "the determinative question in Newton's case [was] . . . whether California wage and hour laws are 'inconsistent with' existing federal law." *Id.* at 1093 (quoting 43 U.S.C. § 1333(a)(2)(A)). Because "the FLSA's savings clause expressly provides that states are free to adopt more protective standards for minimum wages or maximum hours," we held that California's wage-and-hour laws were not inconsistent with federal law, and therefore applied on the OCS. *Id.* at 1097–99.

The Supreme Court granted certiorari to resolve these competing interpretations of the OCSLA. *Parker Drilling*, 139 S. Ct. at 1886–87. Parker Drilling urged the Supreme Court to adopt the Fifth Circuit's interpretation, but Newton argued "[i]n essence, . . . that state law is 'inconsistent' [with federal law] only if it would be pre-empted under [] ordinary pre-emption principles." *Id.* at 1888. The Court agreed with Parker Drilling because a "pre-emption analysis is applicable only where the overlapping, dual jurisdiction of the Federal and State Governments makes it necessary to decide which law takes precedence." *Id.* at 1889. The Supreme Court explained that because the OCS was never part of a state, the "ordinary question in pre-emption cases"—whether a conflict exists between federal and state law—is not present on the OCS. *Id.* Instead, the Court reasoned that "like the generally applicable enclave rule, the OCSLA sought to make all OCS law federal yet also 'provide a sufficiently detailed legal framework to govern life' on the OCS." *Id.* at 1890 (quoting *Shell Oil Co. v. Iowa Dep't of Revenue*, 488 U.S. 19, 27 (1988)). "The text and context of the OCSLA therefore suggest that state law is not adopted to govern the OCS where federal law is on point," and "the OCSLA . . . does not adopt state law 'where there is no gap to fill.'" *Id.* at 1891 (quoting *Lewis v. United States*, 523 U.S. 155, 163 (1998)).

*Parker Drilling* concluded that "the question is whether federal law has already addressed the relevant issue; if so, state law addressing the same issue would necessarily be inconsistent with existing federal law and cannot be adopted as surrogate federal law. Put another way, to the extent federal law applies to a particular issue, state law is inapplicable." *Id.* at 1899. Applying this rule to Newton's claims, the Court observed that the FLSA provides a minimum wage and addresses standby time insofar as it

10        MAUIA V. PETROCHEM INSULATION

provides that standby time is not work time that must be compensated. *Id.* at 1893. The Court concluded: (1) there was no gap in federal law to fill; (2) California law governing minimum wage and standby time did not apply; and (3) Newton's state-law claims necessarily failed. *Id.*

IV

As *Parker Drilling* instructs, to resolve Mauia's claims we begin by asking "whether federal law has already addressed" the relevant issue. *Id.* Mauia's meal- and rest-period claims rely on his allegations that Petrochem provided only one meal break after the beginning of the sixth hour of work, and only two rest breaks during his twelve-hour shifts. Mauia contends that California law applies, and that Petrochem's practices violate California law. We disagree. Because the FLSA addresses meal and rest periods, we conclude that California's meal- and rest-period laws are not adopted as surrogate federal law on the OCS.

The FLSA was enacted to protect employees from working excessive hours for substandard pay. *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706–07 (1945). To achieve this goal, the FLSA sets a minimum hourly wage, and mandates overtime pay for employees working more than forty hours per week. *Id.* at 707; *see* 29 U.S.C. §§ 206(a)(1)(C), 207(a)(1). The FLSA does not require that employers provide meal or rest periods,[2] but its implementing regulations address both meal and rest periods by specifying

---

[2] U.S. DEP'T OF LABOR, *What does the Fair Labor Standards Act NOT require?*, https://webapps.dol.gov/elaws/whd/flsa/screen6.asp (last visited May 21, 2021).

that all rest periods and non-bona fide meal periods must be compensated.

Regarding meal breaks, the FLSA's implementing regulations state:

> (a) Bona fide meal periods. Bona fide meal periods are not worktime. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be completely relieved from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating.
>
> (b) Where no permission to leave premises. It is not necessary that an employee be permitted to leave the premises if he is otherwise completely freed from duties during the meal period.

29 C.F.R. § 785.19. Put simply, if an employee is not "completely relieved from duty" during a meal period, the FLSA requires employers to compensate employees for that time. *Id.*

Regarding rest breaks, the implementing regulations provide:

> Rest periods of short duration, running from 5 minutes to about 20 minutes, are common in industry. They promote the efficiency of the employee and are customarily paid for as working time. They must be counted as hours worked. Compensable time of rest periods may not be offset against other working time such as compensable waiting time or on-call time.

29 C.F.R. § 785.18. In other words, federal law encourages, but does not require, that employers provide rest breaks. And it requires employers to compensate employees for any rest breaks that are provided. An employer who fails to abide by these meal- and rest-period regulations is liable to the employees "in the amount of [the employees'] unpaid minimum wages, or their unpaid overtime compensation, . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

The FLSA is not as protective of workers as California law; only the latter mandates that employers provide meal and rest periods of certain duration and at specific intervals. *See* Cal. Lab. Code § 512(a); 8 Cal. Code Regs. § 11160(11). But the fact that federal law does not offer comparable protections does not mean there is a gap in federal law that state law may fill. The FLSA's implementing regulations expressly contemplate meal and rest periods, address how and when these periods must be compensated as work time, and provide a remedy to employees whose employers fail to comply. Because the federal regulations address meal and

MAUIA V. PETROCHEM INSULATION          13

rest periods, there is no gap in federal law for state law to fill. *See Parker Drilling*, 139 S. Ct. at 1891.

The district court approached this analysis differently. It looked first to state law and compared California's wage-and-hour provisions against the protections provided by federal law to determine whether there is a gap between the two schemes. The court found a gap because "California law [] provides a minimum number of meal periods that must be given, when they must be given, and a remedy for the employee if they are not." California law also requires a rest period of ten minutes for each four-hour work period. In contrast, "the [federal] regulation[s] concern[] the computation of hours worked for purposes of determining overtime pay, rather than *regulating* meal or rest periods."

We cannot reconcile the district court's approach with the Supreme Court's decision in *Parker Drilling*. "[T]he only law on the OCS is federal law," *Parker Drilling*, 139 S. Ct. at 1889, so we must begin with the presumption that federal law applies, and state law is adopted only to fill gaps in federal law. *Id.* at 1891. The fact that federal law does not provide meal- and rest-period protections as robust as California's does not mean that there is a gap in federal law or that federal law does not address meal and rest periods. The result we reach here is consistent with *Parker Drilling*, which made clear that state law plays only a limited role on the OCS. *Id.*

Mauia further argues that the FLSA's regulations are not applicable to his meal- and rest-period claims because they "fall[] under a part of a subchapter . . . relating to 'hours worked.'" Stated differently, because the federal rules concerning meal and rest periods are folded into the FLSA's

definition of "hours worked" that must be compensated, Mauia sees no "direct federal law counterpart to [the] state law[s]" requiring employers to provide meal and rest periods, and he concludes there is a gap between the two wage-and-hour schemes.

Mauia is correct that the claims at issue in *Parker Drilling* had direct federal counterparts: both the FLSA and California law provide for a minimum wage—although California's is more generous—and both federal and California law address whether employees must be paid for standby time.  *Id.* at 1893; *compare* 29 U.S.C. § 206(a)(1), *with* Cal. Lab. Code § 1182.12(b); *compare* 29 C.F.R. § 785.23, *with Mendiola v. CPS Security Sols., Inc.*, 340 P.3d 355, 361 (Cal. 2015).  But by urging us to find a gap if there is "no direct federal counterpart" to a state provision, Mauia essentially asks that we revive the type of pre-emption analysis the Supreme Court rejected in *Parker Drilling*.  *See* 139 S. Ct. at 1889.  Mauia's argument fails because *Parker Drilling* does not require a direct federal counterpart; it requires that we ask whether federal law addresses the relevant issue, not whether federal law addresses it in the same way.  *See id.* at 1892–93 (rejecting Newton's claim for standby-time wages under California law because federal law provides that standby time is not compensable).

The FLSA requires that all rest periods must be counted as work time.  It also requires that any meal period during which an employee is not "completely relieved from duty" must be counted as work time.  29 C.F.R. §§ 785.18, 785.19.  Federal law therefore addresses meal and rest periods, and California law does not provide the rule of decision for meal- and rest-time claims arising on the OCS.  We reverse the district court's denial of Petrochem's motion to dismiss

MAUIA V. PETROCHEM INSULATION 15

Mauia's California meal- and rest-period claims. Mauia concedes that his unfair competition claim is predicated on Petrochem's alleged violations of California meal- and rest-break laws. Therefore, we also reverse the order denying Petrochem's motion to dismiss his unfair competition claim.

**REVERSED.**